STATE OF CONNECTICUT *v.* VERONICA HART
(14230)

PETERS, C. J., CALLAHAN, GLASS, BORDEN and BERDON, Js.

Argued October 2, 1991—decision released April 7, 1992

*Rita M. Shair,* assistant state's attorney, with whom were *John H. Malone,* assistant state's attorney, and, on the brief, *John M. Bailey,* state's attorney, and *Brian Hershman,* law student intern, for the appellant (state).

*Temmy Ann Pieszak,* assistant public defender, with whom were *Susan Brown,* assistant public defender, and *G. Douglas Nash,* public defender, for the appellee (defendant).

CALLAHAN, J. The dispositive issue in this appeal is who has the burden of proof on the issue of drug dependency in a case charging sale of a narcotic substance by a person who is not drug-dependent.

The defendant, Veronica Hart, was charged in a four count information with: (1) sale of a narcotic substance by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b)[1]; (2) sale of a narcotic substance in violation of General Statutes § 21a-277 (a)[2]; (3) conspiracy to sell a narcotic substance

[1] General Statutes § 21a-278 provides in relevant part: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION OR ADMINISTRATION BY NON-DRUG-DEPENDENT PERSON . . . .

"(b) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marihuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance except as authorized in this chapter, and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years nor more than twenty-five years. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years or, (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution." This statute was formerly General Statutes § 19-480a.

[2] General Statutes § 21a-277 provides in relevant part: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

in violation of General Statutes §§ 21a-277 (a) and 53a-48 (a)[3]; and (4) possession of a narcotic substance in violation of General Statutes § 21a-279 (a).[4] The defendant was tried jointly with another accused, John Cavanaugh. Following her conviction by a jury of all of the above counts, the defendant appealed to the Appellate Court. In *State* v. *Hart,* 23 Conn. App. 746, 585 A.2d 103 (1991), the Appellate Court reversed her conviction of sale of narcotics by a person who is not drug-dependent because it concluded that the state failed to prove beyond a reasonable doubt that the defendant was not drug-dependent, and that the trial court improperly allowed the jury to determine whether the issue of drug dependency had been raised.

We granted the state's petition for certification to appeal from the decision of the Appellate Court; *State* v. *Hart,* 217 Conn. 811–12, 587 A.2d 152 (1991); limited to the following three questions: "1. Did the Appellate Court correctly rule that the state may not satisfy its burden of proving the defendant is not drug-dependent

[3] General Statutes § 53a-48 provides: "CONSPIRACY. RENUNCIATION. (a) A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy.

"(b) It shall be a defense to a charge of conspiracy that the actor, after conspiring to commit a crime, thwarted the success of the conspiracy, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose."

[4] General Statutes § 21a-279 provides in relevant part: "PENALTY FOR ILLEGAL POSSESSION. SUBSTITUTION OF MEDICAL TREATMENT FOR CRIMINAL SANCTIONS. (a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

by destroying the credibility of defense witnesses, even though drug dependency is not an element of General Statutes § 21a-278 (b)? 2. Was the Appellate Court correct in not considering facts elicited by the state during cross-examination when it determined there was insufficient evidence of non-drug dependency? 3. Did the Appellate Court correctly conclude that the trial court's instructions were erroneous because it instructed the jury to determine whether the defendant's evidence of drug dependency was credible?"[5] We conclude that the Appellate Court incorrectly ruled on the first and second certified questions, and improperly ordered the trial court to acquit the defendant of a violation of § 21a-278 (b).

The opinion of the Appellate Court accurately reports the relevant facts. *State* v. *Hart,* supra, 23 Conn. App. 748. For the purposes of this case, we note the following. Stephen Cahill and Paul Vanderheiden were police officers affiliated with the statewide narcotics task force. On the evening of October 23, 1986, Cahill and Vanderheiden traveled to the 190 East Cafe in Enfield where they had been assigned to complete an undercover narcotics enforcement operation. Upon his arrival at the bar, Cahill made it known to various persons that he was interested in purchasing narcotics. While Cahill was seated in a corner of the bar, the defendant approached him and stated that she had heard that he

[5] In certifying the third issue we asked whether the Appellate Court correctly ruled that the trial court's instructions were improper because they required the jury to determine whether the defendant's evidence was "credible." The issue decided by the Appellate Court, however, was whether the jury was properly asked to determine whether the defendant's evidence was substantial enough to raise the issue of drug dependency. Counsel for both parties have thoroughly briefed the issue decided by the Appellate Court. Accordingly, we will address the issue of whether the Appellate Court was correct in concluding that the trial court improperly instructed the jury to determine whether the defendant's evidence was substantial, thereby raising the issue of drug dependency. *Phillips* v. *Warden,* 220 Conn. 112, 115–16 n.2, 595 A.2d 1356 (1991).

was interested in purchasing some cocaine. The defendant told Cahill that if he would give her $50 she would obtain a gram of cocaine from Cavanaugh, a bouncer at the bar, which she would divide with Cahill. After Cahill gave the defendant the money, she approached Cavanaugh and transferred the money to him. In return, Cavanaugh gave the defendant a packet containing approximately one gram of cocaine. She then returned to Cahill, and the two left the bar and divided the cocaine in Cahill's car.

The jury also heard evidence indicating that the defendant was drug-dependent at the time of the charged offenses. Joni Zarcaro testified that she had known the defendant at the time of the charged offenses, and that she had witnessed the defendant use cocaine two or three times a week. Elizabeth Ann Donahue stated that she also knew the defendant at the time of the charged offenses and that for as long as she had known her, the defendant had admitted that she had a drug problem. Donahue testified that she had advised the defendant to seek drug treatment, but was not aware that the defendant had ever done so, and she believed that the defendant still had a drug problem at the time of trial. David Lombardi also testified that he had known the defendant at the time of the charged offenses. Lombardi stated that when he was with the defendant and drugs were available, which was "pretty much all the time," the defendant would invariably try to acquire the drugs. He testified that he had observed the defendant use both cocaine and marihuana, and that he had personally used cocaine with the defendant five hundred times over the four or five years he had known her. Lombardi testified that, in 1986 and 1987, the defendant had sometimes complained that she could not go to work because of drug use, and he had heard her say that she "needed cocaine." Lombardi testified that

he had seen the defendant in bars, in malls and around town when she appeared to be intoxicated, either on drugs or alcohol.

Further, Lawrence Weiner, a psychiatrist, testified as an expert witness. He stated that he had met with the defendant in November, 1988, and completed a drug dependency evaluation of her at that time. He testified that the defendant had told him that, at the time of the charged offenses, she was using cocaine intranasally. Weiner also testified that the defendant told him that she began using cocaine on a daily basis in late 1987, and that, from that time forward, she spent $50 a day on cocaine. Weiner stated that the defendant told him that she used all the money she had remaining after buying food and paying rent to purchase cocaine. He also testified that the defendant had told him that in 1987 and 1988, she suffered from symptoms of cocaine withdrawal, including a craving for cocaine, and depression. He additionally stated that the defendant had reported to him that she had tried to stop using cocaine, but had not been successful. Weiner concluded that the defendant had used cocaine episodically prior to November, 1987. Weiner testified that, as a result of the evaluation, he diagnosed the defendant as having a dependence on both cocaine and alcohol at the time the charged offenses were committed.

The state conducted cross-examination of all of the above witnesses. Zarcaro admitted that she had seen the defendant many times inside bars, sometimes for four hours or more, but that she had never actually observed the defendant using drugs. Similarly, Donahue stated that she had never actually been in the presence of the defendant when the defendant was using drugs. Lombardi also stated that he saw the defendant in bars three or four times a week in the fall of 1986. He testified that, although he had seen the defendant at the 190 East Cafe for periods of up to eight hours,

he had never actually witnessed her use drugs in the bar. Further, Lombardi stated that when the defendant had come to his house to use drugs, she would sometimes share her cocaine with other people. Lombardi stated that the most cocaine he had ever seen the defendant bring was about one-half gram, although she might actually have had more that he did not see. Lombardi also stated that, at the time of the charged offenses, the defendant was steadily employed, although there were days when she could not go to work because of drug use. Lombardi further admitted that he had seen the defendant stay in bars for six to eight hours and never heard her say that she needed cocaine.

In the course of the state's cross-examination, Weiner admitted that all of his findings were based upon a forty-five minute interview with the defendant in 1988, two years after the charged offenses had allegedly occurred. Weiner conceded that he had failed to perform a physical examination of the defendant and that, although he concluded that the defendant used cocaine intranasally, which could cause physical damage to the nose, he had never examined the defendant's nose to determine whether there was any indication of cocaine use. Weiner also testified that the defendant had stated to him that she had only occasionally used cocaine, once or twice a week, at the time of the charged offenses, and did not begin using cocaine daily until late in 1987. Weiner stated that he recalled that the defendant had told him that she was always able to hold a job. Finally, Weiner admitted that his evaluation of the defendant and his conclusions about her drug use were based solely on information he had obtained from her.

I

We first address the state's claim that the Appellate Court incorrectly ruled that the state failed to disprove drug dependency beyond a reasonable doubt. The state

claims that the Appellate Court improperly failed to consider facts elicited by the state on cross-examination,[6] and improperly held that the state may not satisfy its burden solely by discrediting the defendant's evidence. The state claims that its cross-examination proved beyond a reasonable doubt that the defendant was not drug-dependent. We disagree.

At trial, as noted, the defendant offered testimony through Zarcaro, Donahue, Lombardi and Weiner indicating that she was drug-dependent at the time of the charged offenses.[7] The state cross-examined all of the defense witnesses. The trial court, in its charge, informed the jury that it could properly find that the state's cross-examination proved beyond a reasonable

---

[6] The defendant contends that the state's claim that it elicited sufficient affirmative evidence through its cross-examination to prove beyond a reasonable doubt that she was not drug-dependent is not reviewable by this court. The defendant claims that the state failed to present this issue to the Appellate Court, and, therefore, asks that we conclude that certification was improvidently granted as to this issue. We conclude that the issue is properly reviewable. Following her conviction, the defendant appealed to the Appellate Court, claiming that the state had failed to meet its burden of proof. The state argued that it had met its burden of proof, stating at oral argument that facts were elicited on cross-examination which satisfied its burden of proof, and referred the Appellate Court to some of the facts set forth in its brief. The Appellate Court did not determine that the state's claim was unreviewable, and, in fact, ruled on the issue, although disagreeing with the state's contention that it had elicited such facts. *State* v. *Hart*, 23 Conn. App. 746, 755–56, 585 A.2d 103 (1991). Moreover, although the defendant filed an opposition to the state's request for certification, she did not claim, as she could have pursuant to Practice Book § 4131, that this claim was unreviewable.

[7] General Statutes § 21a-240 (18), in relevant part, defines drug dependence as "a state of physical or psychic dependence, or both, upon a controlled substance following administration of that controlled substance upon a repeated periodic or continuous basis . . . ."

General Statutes § 21a-240 (19), in relevant part, defines a drug-dependent person as "any person who has developed a state of psychic or physical dependence, or both, upon a controlled substance following administration of that substance upon a repeated periodic or continuous basis. . . ."

doubt that the defendant was not drug-dependent.[8] The Appellate Court, however, concluded that the state's evidence did not disprove drug dependency beyond a reasonable doubt because no affirmative evidence was elicited on cross-examination and, "while a jury may reject a witness' testimony, it may not conclude from that rejection that the opposite is true. *State* v. *Coleman,* 14 Conn. App. 657, 671–76, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988)." *State* v. *Hart,* supra, 23 Conn. App. 755–56.

## A

The state argues that it proved beyond a reasonable doubt that the defendant was not drug-dependent because the jury may have so disbelieved the testimony of the defense witnesses as to infer the opposite of their testimony. We do not agree.

It is without question that the jury is the ultimate arbiter of fact and credibility. *State* v. *Dyson,* 217 Conn. 498, 506, 586 A.2d 610 (1991). As such, it may believe or disbelieve all or any portion of the testimony offered.

---

[8] The trial court instructed the jury that when drug dependency had become an issue in the case "the State is required to prove [it] beyond a reasonable doubt. Now, the State doesn't have to introduce evidence on it, as it may have done in connection with other elements of this incident. To state all of the evidence in the case, there's a pool of evidence for you to consider and any cross-examination done by the State of any witnesses who appeared on behalf of the defendant, in other words, Dr. Weiner. I believe evidence of non-drug dependency can be determined from the cross-examination, if you find that to be if the cross-examination has established in your mind beyond a reasonable doubt that the defendant was not drug-dependent. So all of that evidence is available to you to consider. It's all of the evidence that was given to you in the case. And simply because the State has chosen to offer proof only by way of cross-examination, does not mean that they have not established non-drug dependency, if that be your conclusion. So the cross-examination is just as available as any other evidence that might come before you." Further, the trial court instructed, "[Y]ou may find the State through cross-examination proved beyond a reasonable doubt that the defendant was not drug-dependent at the time of the incident."

Upon review of a defendant's claim that there was insufficient evidence to support his conviction, we view the evidence in the light most favorable to the state. *State* v. *Carpenter,* 214 Conn. 77, 78, 570 A.2d 203 (1990). In the course of that analysis, we assume that the jury credited the evidence favorable to the state and discredited the evidence favorable to the defendant. We have consistently stated, however, that the jury may not infer the opposite of a witness' testimony solely from its disbelief of that testimony. *State* v. *Carter,* 196 Conn. 36, 50, 490 A.2d 1000 (1985); *State* v. *Alfonso,* 195 Conn. 624, 634, 490 A.2d 75 (1985); *Novak* v. *Anderson,* 178 Conn. 506, 508, 423 A.2d 147 (1979); *State* v. *Coleman,* supra, 671–78.

The state argues that the jury should be allowed to infer the opposite of the defense testimony in this case because the defendant did not testify and because the absence of drug dependency is not an element of the state's case. The Appellate Court has concluded that an instruction allowing the jury to infer the opposite of the defendant's testimony impermissibly burdens his fifth and fourteenth amendment right to testify in his own defense. *State* v. *Coleman,* supra, 675. Although a request that the jury infer the opposite of a criminal defendant's testimony may raise additional constitutional questions, we have not limited the rule to circumstances involving the testimony of a criminal defendant. *State* v. *Carter,* supra; *Marquis* v. *Drost,* 155 Conn. 327, 332, 231 A.2d 527 (1967); *Edwards* v. *Grace Hospital Society,* 130 Conn. 568, 574–75, 36 A.2d 273 (1944). Furthermore, whether the issue in contention is an element of a criminal offense is not dispositive. Our rule barring the inference of the opposite of testimony has been applied uniformly in both criminal and civil contexts. *State* v. *Carter,* supra; *State* v. *Alfonso,* supra; *Novak* v. *Anderson,* supra; *Marquis* v. *Drost,* supra. It is an evidentiary issue concerning the

proper method of measuring the sufficiency of the evidence. The distinction between elements and nonelements of a crime, in this particular context, is inconsequential. Accordingly, we conclude that the state could not prove beyond a reasonable doubt that the defendant was not drug-dependent through impermissible inferences of the opposite of testimony favorable to the defense.

## B

The state next asserts that it elicited sufficient affirmative evidence of the nonexistence of drug dependency through cross-examination to prove beyond a reasonable doubt that the defendant was not drug-dependent at the time of the charged offenses. We do not agree.

In the course of its cross-examination, the state elicited information that tended to prove that the defendant was not drug-dependent at the time of the charged offense. Importantly, Weiner admitted that the defendant had told him that, at the time of the offense, she used drugs only occasionally. Further, the state elicited testimony that the defendant had been steadily employed, and that her use of cocaine did not escalate to the level of a daily habit until November, 1987. Zarcaro, Lombardi and Donahue all stated that they had never actually witnessed the defendant using drugs in a bar, although they had seen her in bars regularly. Moreover, Weiner testified that even after the defendant had begun using cocaine on a daily basis, she had not spent an excessive amount of time planning to get it, taking it or recovering from its effects. This evidence was probative of the state's assertion that the defendant was not drug-dependent at the time of the offense. Contrary to the opinion of the Appellate Court, the state's cross-examination was not limited to an

attack on the credibility of the defense witnesses.[9] The Appellate Court, therefore, improperly ruled that the state elicited *no* affirmative evidence on cross-examination. The evidence that it did elicit, however, as a matter of law, was not sufficient to prove beyond a reasonable doubt that the defendant was not drug-dependent at the time of the offenses. Accordingly, we conclude that the Appellate Court was correct when it determined that the state failed to prove beyond a reasonable doubt that the defendant was not drug-dependent, and that the trial court's instruction informing the jury that it might so find was improper.

## II

The state alternatively argues that it does not bear the burden of proving beyond a reasonable doubt that the defendant was not drug-dependent. It claims that the defendant bears the burden of proving drug dependency by a preponderance of the evidence.[10] We agree.

[9] The state asserts that it elicited testimony on cross-examination susceptible to the following inferences: (1) The defendant was able to go for many hours on weekends without using drugs; (2) the defendant was not a "regular user" until after 1987; (3) Weiner testified that the Diagnostic and Statistical Manual III-R states that there is a list of criteria which constitutes the diagnosis of cocaine dependency; Hart did not satisfy the criteria; (4) Hart spent only $50 per week on cocaine; (5) the defendant always went to work promptly; (6) the defendant would remain at a bar for up to six hours without leaving and would not use drugs during that time; (7) the defendant's ability to support herself was never affected; and (8) the defendant was never fired from a job because of cocaine use. Our review of the record does not support the state's contention that all these facts can be fairly inferred.

[10] Although the defendant asserts that the issue of who bears the burden of proof of drug dependency was decided by this court in *State* v. *Brown,* 163 Conn. 52, 301 A.2d 547 (1972), and *State* v. *Januszewski,* 182 Conn. 142, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981), and that the propriety of those decisions is not a properly certified question, we conclude that the definition of the state's burden of proof is "inescapably intertwined" with the issue of whether the state met their burden. *State* v. *Torrence,* 196 Conn. 430, 434, 493 A.2d 865 (1985). Having determined that the issue was properly before us, fol-

General Statutes § 21a-269 states: "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, proviso or exemption contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant."[11] We have held that the absence of drug dependency is not an element of the offense of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b). Rather, it is an exemption from liability under § 21a-269. *State* v. *Januszewski,* 182 Conn. 142, 166, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). Therefore, it was not necessary for the state to negate drug dependency, but, rather, the defendant had the burden of proving that she was drug-dependent.

We have previously considered the meaning of "burden of proof" under § 21a-269. Id.; *State* v. *Brown,* 163 Conn. 52, 65–67, 301 A.2d 547 (1972). We stated that when a defendant offers "substantial evidence tending to prove his claim . . . [§ 21a-269] loses all operative effect." *State* v. *Brown,* supra, 66–67. The state must then "prove beyond a reasonable doubt that the accused was not entitled to the benefit of any excuse, proviso or exemption claimed by him." Id., 67; *State* v. *Januszewski,* supra, 169. In both of those cases, however, the defendant had offered no evidence at all to bring himself within the relevant exemptions.[12] There-

lowing oral argument, we requested the parties to provide this court with simultaneous supplemental briefs limited to the following issue: "Once the defendant has raised the issue of drug dependency, does General Statutes § 21a-269 place the burden of proof on the state or on the defendant, and by what standard?"

[11] Prior to 1983, this provision was found at General Statutes § 19-474. It has remained unaltered subsequent to its transfer.

[12] In *State* v. *Januszewski,* 182 Conn. 142, 438 A.2d 679 (1980), the defendant claimed that the state had the burden of disproving his drug dependency,

fore, our discussions in those cases of the amount of evidence necessary for the defendant to meet his burden of proof was not essential to our decisions. Here, for the first time, we are presented with a case where the defendant has offered substantial evidence of drug dependency and we are squarely presented with the issue of the extent of the defendant's burden of proof.[13]

Considering the plain language of the statute and confronting the results of an application of the law as stated in *Brown* and *Januszewski,* we conclude that the language of § 21a-269, which places the "burden of proof" on a defendant invoking the exemption specified by § 21a-278 (b), requires the defendant to carry the burden of persuading the jury by a preponderance of the evidence that he or she is drug-dependent. It would overly strain the language that places the "burden of proof" on a defendant to construe it merely to mean, as *Brown* and *Januszewski* suggest, that the defendant need only raise some evidence of his or her drug dependency to shift the burden to the state to prove a negative, i.e., lack of drug dependency, beyond a reasonable doubt.

Although the words "burden of proof" are occasionally construed to mean burden of production, that con-

and in *State* v. *Brown,* 163 Conn. 52, 301 A.2d 547 (1972), the defendant claimed that the state had the burden of disproving that his possession of narcotics was licensed.

[13] While we have not been squarely presented with the issue of the extent of the defendant's burden of proof, the Appellate Court has. Consistent with our language in *State* v. *Brown,* 163 Conn. 52, 301 A.2d 547 (1972), and *State* v. *Januszewski,* 182 Conn. 142, 438 A.2d 679 (1980), the Appellate Court has affirmatively held that the defendant has the burden of raising the issue of drug dependency by offering evidence which, if credited by the jury, could raise a reasonable doubt as to whether she is not drug-dependent, and that if the issue is raised, the state must disprove beyond a reasonable doubt that the defendant is drug-dependent. *State* v. *Rivera,* 23 Conn. App. 592, 583 A.2d 931 (1990), cert. denied, 217 Conn. 807, 584 A.2d 1192 (1991); *State* v. *McNeil,* 21 Conn. App. 519, 574 A.2d 1314, cert. denied, 216 Conn. 807, 580 A.2d 64 (1990); *State* v. *Luca,* 19 Conn. App. 668, 563 A.2d 752 (1989).

struction is inappropriate in the present circumstances. To hold that the defendant bears only the burden of production would, in some instances, mandate that the defendant be acquitted of an offense under § 21a-278 (b) based on the testimony of defense witnesses that was found to be entirely unpersuasive by the jury. That result is especially troubling in view of the difficulty of disproving drug dependency. As we recognized' in *Januszewski,* "[a] defendant's drug dependency at the specific point of time in the past at which the offense occurred is certainly a matter . . . within his own knowledge. Moreover, the enactment of [§ 21a-269] appears to be an implicit recognition by the legislature of the difficulty created when any party is given the burden of proving the nonexistence of a certain fact, especially where, as in this case, the fact is the nonexistence of a physical status of the defendant at one, usually distant, point prior in time." *State* v. *Januszewski,* supra, 167. Furthermore, in a case charging that the defendant is not drug-dependent, the state's preparation of its case is hindered because it has no method by which to discover whether drug dependency will be an issue at trial. Compare Practice Book §§ 758 and 759 regarding the defense of mental disease or defect. We conclude that the legislature did not intend to mandate an acquittal whenever the defendant has offered evidence that might be completely disbelieved by the jury.[14] Accordingly, we hold that § 21a-269 assigns to the defendant the burden of persuading the jury by a preponderance of the evidence

---

[14] The defendant refers this court to the legislative history of General Statutes § 21a-278, which was passed in 1971, and argues that comments made by legislators relating to that statute demonstrate that "burden of proof" as set forth in General Statutes § 21a-269 places only the burden of production upon the defendant. The defendant provided no legislative history of § 21a-269, which was passed in 1967. We do not find the comments made in 1971 concerning § 21a-278 to be particularly useful in determining the meaning of § 21a-269.

that he or she is drug-dependent. See *Dickerson* v. *State,* 414 So. 2d 998 (Ala. App. 1982); *State* v. *Buchman,* 361 So. 2d 692 (Fla. 1978); *Burgin* v. *State,* 431 N.E.2d 864, 866–67 (Ind. App. 1982); *State* v. *Carter,* 214 Kan. 533, 521 P.2d 294 (1974); *State* v. *Dixon,* 546 S.W.2d 774 (Mo. App. 1977).

The defendant further asserts that even if we conclude that the legislature intended that the language placing the burden of proof on the defendant requires the defendant to prove by a preponderance of the evidence that he or she was drug-dependent at the time of the charged offenses, such a construction would place an unconstitutional burden upon the defendant. " '[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements *included in the definition of the offense* of which the defendant is charged.' " (Emphasis in original.) *McMillan* v. *Pennsylvania,* 477 U.S. 79, 85, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986); *Patterson* v. *New York,* 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977). The federal due process clause does not bar state legislatures from placing the burden on a defendant to prove an affirmative defense or to prove that he or she falls within an exemption to liability for an offense. *McMillan* v. *Pennsylvania,* supra. We have concluded that the legislature intended drug dependency to be an exemption to liability under § 21a-278, and not an element of that offense. *State* v. *Januszewski,* supra. Requiring the defendant to prove by a preponderance of the evidence that he or she falls within that exception does not relieve the state of its burden of proving beyond a reasonable doubt all of the elements of § 21a-278, and comports with federal due process.

## III

Because we conclude that the state did not have the burden of proving beyond a reasonable doubt that the

defendant was not drug-dependent, we disagree with the Appellate Court's conclusion that the defendant is entitled to a judgment of acquittal. We conclude, rather, that the defendant is entitled to a new trial on the charge of sale of narcotics by a person who is not drug-dependent.

Relying upon our language in *Brown* and *Januszewski*, it was reasonable for counsel and the trial court to conclude that the defendant did not bear the burden of persuasion, and it is evident from the record that counsel and the court did draw that conclusion. Reasonably believing that she only needed to offer enough evidence to raise the issue of drug dependency, the defendant may not have introduced as much evidence as she would have had she understood that she had the burden of proving by a preponderance of the evidence that she was drug-dependent. Because we are stating for the first time that the defendant bears the burden of proving by a preponderance of the evidence that she was drug-dependent, and because the jury instructions relating to this issue did not reflect that burden, fairness requires that the defendant be afforded the opportunity to substantiate her claim. Therefore, we conclude that the defendant is entitled to a new trial on the charge of sale of a narcotic substance by a person who is not drug-dependent in violation of § 21a-278 (b). See *Vines* v. *Orchard Hills, Inc.*, 181 Conn. 501, 514, 435 A.2d 1022 (1980).[15]

---

[15] Relying upon the United States Supreme Court decision in *Bouie* v. *Columbia*, 378 U.S. 347, 84 S. Ct. 1697, 12 L. Ed. 2d 894 (1964), the defendant also claims that an application of this rule to her would violate principles of due process. We do not agree. In *Bouie*, the court stated: "[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids. An *ex post facto* law has been defined as one 'that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action,' or 'that *aggravates* a crime, or makes it *greater* than it was, when committed.' *Calder*

## IV

The state next claims that the trial court's instruction did not improperly allow the jury, rather than the court, to determine whether the issue of drug dependency had been raised. Having concluded that the defendant is entitled to a new trial, we need not address this issue because it is unlikely to recur on remand. *State* v. *Williams,* 202 Conn. 349, 365, 521 A.2d 150 (1987). Both parties agree that it is the function of the trial court to determine if the issue of drug dependency is raised, and our decision would turn upon a very fact specific review of the instant instruction. Since the instructions were improperly based upon the language of *Brown* and *Januszewski,* which we have now corrected, this issue should not arise again. In the future, the trial court should instruct the jury concerning the issue of drug dependency and the defendant's burden of proof if it determines that there is " 'any foundation in the evidence, no matter how weak or incredible . . . .' " *State* v. *Fuller,* 199 Conn. 273, 278, 506 A.2d 556 (1986).

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction that it be remanded to the trial court with direction to reverse the judgment with respect to the conviction of sale of a narcotic substance by a person who is not drug-dependent in violation of § 21a-278 (b), and to order a new trial on that charge.

v. *Bull,* 3 Dall. 386, 390 [1 S. Ct. 172, 1 L. Ed. 648 (1798)]." *Bouie* v. *Columbia,* supra, 353. State courts are not allowed to effect an unforeseeable and retroactive judicial expansion of narrow and precise penal statutory language, since a court cannot do by statutory construction what the ex post facto clause prohibits a legislature from doing by legislation. Id., 352–54. This decision does not expand the offense of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b). Because the elements of that offense remain unaltered, due process is not violated.

In this opinion, PETERS, C. J., GLASS and BORDEN, Js., concurred.

BERDON, J., dissenting. Today, the majority wipes out twenty years of precedent wherein this court has held that the "burden of proof" referred to in General Statutes § 21a-269 refers to the burden of going forward, and once the defendant meets that burden with substantial evidence, the state has the burden of persuasion, that is, proof beyond a reasonable doubt.[1] But far more important than abandoning this precedent is the constitutional consequence when the majority's interpretation is applied to General Statutes § 21a-278 (b)—that is, it violates the defendant's federal constitutional right to due process of the law under the fourteenth amendment—which I shall review first.

I

The majority holds that the burden of persuading the jury that the defendant "is not at the time of such action [in this case, a sale of cocaine] a drug-dependent person," as provided in § 21a-278 (b)[2] is placed upon the defendant pursuant to § 21a-269. Section 21a-269 provides: "In any complaint, information or indictment, and in any action or proceeding brought for the enforcement of any provision of this part, it shall not be necessary to negative any exception, excuse, proviso or

[1] "The phrase 'burden of proof' is used in two ways. First, to refer to the burden of persuading the jury that a fact exists, and second, to refer to the burden of producing sufficient evidence to persuade the judge to allow the case or issue to go to the jury, *viz.*, that a *prima facie* case exists. *Sortito* v. *Prudential Ins. Co.*, 108 Conn. 163, 171, 142 A. 808 (1928); *Baxter* v. *Camp*, 71 Conn. 245, 252–53, 41 A. 803 (1898). The burden of persuasion creates a risk of an adverse decision on the merits by the jury, whereas the burden of going forward or producing evidence creates a risk that the judge will withdraw the case or an issue from the jury." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 4.1.1.

[2] See footnote 1 of the majority opinion for the relevant part of the text of General Statutes § 21a-278.

exemption contained in said section, and the burden of proof of any such exception, excuse, proviso or exemption shall be upon the defendant." Such an interpretation of §§ 21a-278 (b) and 21a-269 violates the due process clause because whether a defendant is drug-dependent is clearly an element of the crime under § 21a-278 (b).

The United States Supreme Court in *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), made crystal clear that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In making the determination of what facts the state must prove beyond a reasonable doubt to constitute the crime, the majority of the United States Supreme Court has held that "the state legislature's definition of the elements of the offense is usually dispositive . . . ." *McMillan* v. *Pennsylvania,* 477 U.S. 79, 85, 106 S. Ct. 2411, 91 L. Ed. 2d 67 (1986). Nevertheless, "there are obviously constitutional limits beyond which the States may not go in this regard." *Patterson* v. *New York,* 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977).[3]

The majority relies on *McMillan* v. *Pennsylvania,* supra, for its position that drug dependency is not an element of the crime, but their reliance is misplaced. In *McMillan,* the Pennsylvania statutes provided that if a defendant is convicted of certain enumerated felo-

---

[3] *Patterson* v. *New York,* 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977), pointed out some of those limitations as follows: " '[I]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime.' *McFarland* v. *American Sugar Co.,* 241 U.S. 79, 86 [36 S. Ct. 498, 60 L. Ed. 899] (1916). The legislature cannot 'validly command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all the facts essential to guilt.' *Tot* v. *United States,* 319 U.S. 463, 469 [63 S. Ct. 1241, 87 L. Ed. 1519] (1943)." *McMillan* v. *Pennsylvania,* 477 U.S. 85, 87, 106 S. Ct. 2411, 96 L. Ed. 2d 67 (1986).

nies and the sentencing judge finds by a preponderance of the evidence the defendant's visible possession of a firearm during the commission of the felony, he or she would then be subject to a mandatory minimum sentence. The court pointed out that *"the Pennsylvania Legislature has expressly provided that visible possession of a firearm is not an element of the crimes enumerated* in the mandatory sentencing statutes, § 9712 (b), but instead is a sentencing factor that comes into play *only* after the defendant has been found guilty of one of those crimes beyond a reasonable doubt." (Emphasis added.) Id., 85–86. The Pennsylvania legislature specifically provided that "§ 9712 only becomes applicable after a defendant has been duly convicted of the crime for which he is to be punished." Id., 87. This is not the case in regard to § 21a-278 (b); the provision of not being drug-dependent is an integral part of the statute clearly making it an element of the crime.

This case comes within *Mullaney* v. *Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). In *Mullaney,* the Maine statute required "a defendant charged with murder to prove that he acted 'in the heat of passion on sudden provocation' in order to reduce the homicide to manslaughter," and, thereby reduce the maximum possible sentence. Id., 684–85. The United States Supreme Court held that the state was required to prove the lack of "the heat of passion" beyond a reasonable doubt as an element of the crime. Id., 704. Likewise, under our statute, the provision of lack of drug dependency results in a difference in the sentence. Section 21a-278 (b) provides that a defendant who is not drug-dependent is subject to a prison term for a minimum of "not less than five years nor more than *twenty years"* for a first offense. (Emphasis added.) If a defendant is charged under General Statutes § 21a-277 (a), which is identical to § 21a-278 (b) but does not require the defendant to be drug-dependent, he or

she is subject for the first offense to a prison term of *"not more than fifteen years."*[4] (Emphasis added.) Accordingly, as in *Mullaney,* it becomes an element of the crime and the state must prove that the defendant was not drug-dependent beyond a reasonable doubt once appropriately raised by the defendant.

This distinction was underscored in *McMillan* when the court stated: "The Court in *Mullaney* observed, with respect to the main criminal statute invalidated in that case, that once the State proved the elements which Maine required it to prove beyond a reasonable doubt the defendant faced 'a differential in sentencing ranging from a nominal fine to a mandatory life sentence.' [*Mullaney* v. *Wilbur,* supra, 700.] In the present case the situation is quite different. Of the offenses enumerated in the Act . . . [several] are first-degree felonies subjecting the defendant to a maximum of 20 years' imprisonment. [Section] 1103 (1). . . . Section 9712 *neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty;* it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the special finding of visible possession of a firearm. Section 9712 'ups the ante' for the defendant only by raising to five years the minimum sentence which may be

---

[4] General Statutes § 21a-277 provides in relevant part: "(a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

imposed within the statutory plan. The statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense. Petitioners' claim that visible possession under the Pennsylvania statute is 'really' an element of the offenses for which they are being punished—that Pennsylvania has in effect defined a new set of upgraded felonies—*would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment,* cf. 18 U.S.C. § 2113 (d) (providing separate and greater punishment for bank robberies accomplished through 'use of a dangerous weapon or device'), *but it does not.*" (Emphasis added.) *McMillan* v. *Pennsylvania,* supra, 87–88.

Although the state may place the burden of production on the accused, the state clearly cannot shift the burden of persuasion to relieve itself of the obligation to prove each element of the crime beyond a reasonable doubt, even though the clause in dispute would only affect the penalty. The court in *Mullaney* observed: "The safeguards of due process are not rendered unavailing simply because a determination may already have been reached that would stigmatize the defendant and that might lead to a significant impairment of personal liberty. The fact remains that the consequences resulting from a verdict of murder, as compared with a verdict of manslaughter, differ significantly. Indeed, when viewed in terms of the potential difference in restrictions of personal liberty attendant to each conviction, the distinction established by Maine between murder and manslaughter may be of greater importance than the difference between guilt or innocence for many lesser crimes." *Mullaney* v. *Wilbur,* supra, 698.

It is also clear under our state law that the lack of drug dependency is an element of § 21a-278. When a

statute is ambiguous, we should look to the legislative history. *State* v. *Champagne,* 206 Conn. 421, 428, 538 A.2d 193 (1988). It becomes apparent that the legislature intended non-drug dependency to be an element of § 21a-278 (b). When introducing the legislation, the House chairman of the Judiciary Committee explained that "the problem with [§ 21a-277 (a)] is the fact that in many instances, the seller who is not a drug addict is given a suspended sentence . . . . What this bill says is that insofar as the person who is not a drug addict, if he sells, he shall go to jail for not less than ten [presently amended to five] years for the first offense . . . ." 14 H.R. Proc., Pt. 10, 1971 Sess., p. 4613 (Representative John Carrozzella). More importantly, the establishment of § 21a-278 sets the mandatory maximum sentence for a conviction of possession with intent to sell by a person who is not drug-dependent at twenty years for a first offense, while a similar conviction pursuant to § 21a-277 carries a mandatory maximum sentence of fifteen years for a first offense. Moreover, the bill's sponsor stated that the "intent of the bill is to give the state's attorney and the prosecuting attorney an opportunity to charge an additional crime which does carry a harder sentence which goes towards imprisoning the person who is not drug-dependent and who is, in fact, selling drugs for a profit." 14 H.R. Proc., Pt. 10, 1971 Sess., pp. 4616–17 (Representative Bernard Avcollie). Therefore, it is clear that the legislature intended § 21a-278 to be an added weapon in the state's attorneys' arsenal, to be used in addition to § 21a-277, with which they could charge sellers of drugs who are not drug-dependent.[5] Any remaining question that the

[5] If the absence of drug dependency had not been intended as an element of General Statutes § 21a-278, then surely the legislature, in passing a statute allowing the state's attorney to charge "an additional crime," would have implicated a criminal defendant's right against multiple convictions for the same offense. Without the drug dependency clause, the statute is identical to General Statutes § 21a-277 for double jeopardy purposes; in

legislature intended the absence of drug dependency to be an element of § 21a-278 is resolved by Representative Avcollie's statement that "in order to charge under this law, a state's attorney . . . would have to take advantage of the existing law . . . and have the party arrested and examined for drug dependency. In other words, you would first have to prove that he was or was not addicted and then charge him with the crime." 14 H.R. Proc., Pt. 10, 1971 Sess., p. 4622.

Accordingly, this court's holding in *State* v. *Januszewski*, 182 Conn. 142, 166–69, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981), was incorrect. Although the court in *Januszewski* set forth the correct analytical framework, it failed to apply it properly. The court stated: "Whether the existence of some fact is an essential element of a crime depends upon whether the existence of that fact forms a part of the conduct prohibited by the statute . . . ." Id., 165. This court, however, then went on to hold that drug dependency was not an essential element of § 21a-278 (b) because "[i]t is not part of the prohibited conduct, i.e., the possession of a certain quantity of a narcotic substance with the intent to sell." Id., 166. In this case, the prohibited conduct is sale of an illegal substance by a person who is not drug-dependent. Clearly, the legislature intended the absence of drug dependency to be an element because, as revealed by the legislative intent, this statute was promulgated for the sole purpose of making the charge of possession with intent to sell by *a person who is not drug-dependent* subject to more severe penalties than already available under existing law. This is further underscored because without this clause,

the present case, the defendant was charged and ultimately convicted under both statutes. The majority, however, does not address the double jeopardy implications of its decision.

§ 21a-278 (b) would be virtually identical to § 21a-277, and, as applied in the present case, the statutes are indeed identical.

Additionally, the majority claims that § 21a-269 is free from ambiguity because the legislature placed the "burden of proof" on the defendant. Their claim simply does not make it so. The majority concedes that the words "burden of proof," as used in § 21a-269, can be and have been construed to mean the burden of production, as well as the burden of persuasion.[6] Under these circumstances, we must resort to statutory construction. In doing so, established rules of construction must be followed.

First, it is axiomatic that "[c]riminal statutes are not to be read more broadly than their language plainly requires and ambiguities are ordinarily to be resolved in favor of the defendant." *State* v. *McGann,* 199 Conn. 163, 177, 506 A.2d 109 (1986). Clearly, under this rule of construction the phrase "burden of proof" must be construed to mean that the defendant merely has the burden of going forward with the evidence and that once he or she comes forward with substantial evidence of drug dependency, the state must prove beyond a reasonable doubt that the person is not drug-dependent.

Second, Professor Colin C. Tait points out in his scholarly work on Connecticut evidence the following: "If an exception is an integral part of the enacting or prohibition clause of a criminal statute, it is deemed an essential element of the crime, and the state must plead and prove that the defendant is not within the exception. *State* v. *Anonymous,* 179 Conn. 516, 519–20, 427 A.2d 403 (1980); *State* v. *Beauton,* 170 Conn. 234, 240, 365 A.2d 1105 (1976). Where an exception to a prohibition is situated separately from the enacting

---

[6] See footnote 1, supra.

clause, the exception is to be 'proven by the defense.' *State* v. *Tinsley,* 181 Conn. 388, 402, 435 A.2d 1002 (1980)." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 4.5.3 (g).[7]

Finally, the legislature's intention that the lack of drug dependency be treated as an element is underscored by its inaction. In the twenty years that we have ruled that § 21a-269 referred only to the burden of production, the legislature has not acted. " '[W]e presume that the legislature is aware of our interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation . . . .' " (Citations omitted.) *McDonough* v. *Connecticut Bank & Trust Co.,* 204 Conn. 104, 119, 527 A.2d 664 (1987); see *Phelps Dodge Copper Products Co.* v. *Groppo,* 204 Conn. 122, 134, 527 A.2d 672 (1987).

## II

Notwithstanding the significant constitutional transgression, the majority decision defies precedent clearly established by this court. In 1972, this court made it crystal clear in *State* v. *Brown,* 163 Conn. 52, 65, 301 A.2d 547 (1972), that "Section 19-474 [now § 21a-269] removes from the state the obligation to come forward with evidence on the defendant's lack of a license in the first instance—but it does not alter its duty to prove a lack of authorization to deal in narcotic drugs when the question of license becomes an issue in the case." See also *State* v. *Thompson,* 197 Conn. 67, 79, 495 A.2d 1054 (1985) (§ 19-474 [now § 21a-269] places burden on defendant to prove existence of impaired mental capacity under exception in § 19-480a (a) [now § 21a-278 (a)]);

---

[7] Moreover, the state's recognition of the absence of drug dependency as an element of General Statutes § 21a-278 is apparent from the content of its information providing that "the said Veronica Hart was not a drug-dependent person."

*State* v. *Januszewski,* supra, 169 (once defendant introduces substantial evidence of drug dependency, burden shifts to state to prove beyond a reasonable doubt that defendant is not entitled to exception); *State* v. *Clark,* 164 Conn. 224, 229, 319 A.2d 398 (1973) (defendant has initial burden to introduce evidence regarding exception for authorized sale of narcotics); *State* v. *Ober,* 24 Conn. App. 347, 354, 588 A.2d 1080, cert. denied, 219 Conn. 909, 543 A.2d 134, 135 (1991) (defendant has burden of introducing " 'some substantial evidence tending to prove his drug dependency' ").

Other jurisdictions have concluded that their versions of the exception statute found in the Uniform Controlled Substances Act (formerly the Uniform Narcotic Drug Act) do not place the burden of persuasion upon the defendant. See *People* v. *Hudson,* 130 Ill. App. 2d 1033, 1040, 266 N.E.2d 481 (1970), rev'd on other grounds, 50 Ill. 2d 1, 276 N.E.2d 345 (1971), cert. denied, 405 U.S. 965, 92 S. Ct. 1176, 31 L. Ed. 2d 241 (1972) ("It places a definite burden upon the defendant to prove the applicability of any exception contained in our Uniform Narcotic Drug Act. No burden is put upon the State, with respect to an exception, until such time as the defendant introduces evidence to show that an exception is applicable."); *State* v. *Gibbs,* 239 N.W.2d 866, 869 (Iowa 1976) ("the reach of § 204.507 (1) must be limited to a requirement that defendant produce some evidence he is within a statutory exception before the State is obligated to assume the burden to negate the exception beyond a reasonable doubt"); *Elkins* v. *State,* 543 S.W.2d 648, 650 (Tex. Crim. App. 1976) (exception statute does not shift burden of persuasion from the state to the accused; "[t]he burden of proof does not change simply because the accused has the burden of producing evidence to establish a defensive plea").

## III

The majority attempts to justify its position on the grounds that the state is disadvantaged "because it has no method by which to discover whether drug dependency will be an issue at trial." I was not aware that the state's convenience should dictate whether a person has either a constitutional or statutory right. " 'The argument from convenience is admissible only where the inference is a permissible one, where the defendant has more convenient access to proof, and where requiring him to go forward with proof will not subject him to unfairness or hardship." *Tot* v. *United States,* 319 U.S. 463, 469, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943). The court can correct any disadvantage by changing its rules to require that the defendant furnish notice before trial that he or she intends to raise the issue of drug dependency. See Practice Book §§ 758 and 759 (defendant must notify prosecuting authority if he or she intends to introduce expert testimony regarding mental disease or defect). The mere failure to adopt rules of procedure should not give this court a license to deprive a defendant of his or her constitutional rights.

We deal with fundamental rights that should not be taken lightly. Significant federal constitutional issues were raised by the defendant, yet unfortunately the majority disposes of them in a cursory manner. Furthermore, in one stroke of its pen, the majority wipes out twenty years of precedent that no one had questioned. Indeed, the burden of proof was not a certified issue when we granted the petition for certification to appeal from the Appellate Court, and it is only through the majority's judicial activism that this issue is now before the court. Although I believe that the entire court should have sat en banc when this issue was raised (in addition to allowing supplemental briefs and oral

argument) for the purpose of affording the people of the state of Connecticut the benefit of the views of all of our justices, only rebriefing was ordered. If any matter is important enough to be heard by this court, it should be decided by all the justices. Accordingly, I dissent.