******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DARYL MCENTYRE *v.* COMMISSIONER
OF CORRECTION
(AC 35607)

DiPentima, C. J., and Prescott and Mullins, Js.

*Argued November 14, 2014—officially released February 3, 2015*

(Appeal from Superior Court, judicial district of New
Haven, Frechette, J.)

*Michael D. Day*, for the appellant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant
state's attorney, with whom, on the brief, were *Michael
Dearington*, state's attorney, and *Sean P. McGuinness*,
assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Daryl McEntyre,[1] appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. Specifically, the petitioner claims that the court erred in concluding that his trial counsel "did not render ineffective assistance of counsel when he failed to adequately cross-examine, impeach and otherwise challenge the testimony" of the state's key witness in the case. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to this appeal. "On April 27, 1993, at approximately 9 p.m., the victim, Ticey Brown, was shot by three assailants in the vicinity of 75 County Street in New Haven. He sustained two fatal gunshot wounds from two different guns. Fifteen minutes prior to the shooting, a witness, Antonio West, saw three men, whom he identified as Willie Harris, Bobby Jones and the [petitioner], heading in the direction of 75 County Street. West last saw the three when they entered a parking lot adjacent to the rear of the building at 75 County Street. West was acquainted with all three men and exchanged a greeting with Harris. At the time West observed the three men, the [petitioner] and Jones were putting on masks. Harris was wearing a hat. A second witness, Priscilla Harris, saw three men running in different directions approximately a block away from the scene just after the shooting. She identified one of them as Harris. Other witnesses corroborated the presence in the area of three men whose height and clothing generally matched the descriptions of height and clothing given by West.

"In addition to West, a key state's witness against the [petitioner] was Jeffrey Covington. On July 15, 1993, Covington, a repeat felony offender, was awaiting trial on drug charges at the New Haven correctional center. On that day, Covington watched a television broadcast of Connecticut's 'Most Wanted' with the [petitioner], who was also being held at the New Haven correctional facility. The subjects of the program were Harris and Jones, who were still at large. After the broadcast, the [petitioner] said to Covington, 'They are looking for (Harris and Jones) for that, what happened on County Street. . . . They didn't do it, I did.' " (Footnote omitted.) *State* v. *McIntyre*, 242 Conn. 320–21, 699 A.2d 911 (1997).

The jury found the petitioner guilty of murder, conspiracy to commit murder, and carrying a pistol without a permit. Id., 319. The court sentenced the petitioner to a total effective sentence of sixty-five years incarceration. The petitioner appealed, and our Supreme Court affirmed the judgments of conviction of murder and conspiracy to commit murder, but reversed and remanded the judgment of conviction of carrying a pis-

tol without a permit, directing the trial court to render a judgment of acquittal on that count. Id., 334. The petitioner was resentenced to sixty years incarceration.

On December 8, 2010, the petitioner filed his fifth amended petition for a writ of habeas corpus, claiming that his criminal trial counsel, Richard Silverstein, provided ineffective assistance when, inter alia, he failed "to adequately cross-examine, impeach and otherwise challenge the testimony" of the state's key witness, Covington. The petitioner specifically argued that Silverstein failed to impeach Covington's credibility as a witness by not showing that Covington "gave the police a false name and false date of birth" when he was arrested on June 9, 1993.[2]

At the habeas trial, Silverstein testified that he had no clear recollection of his strategy for the cross-examination of Covington, and that he could not remember "where Covington fit in to all this." Covington had testified at the habeas trial that he did not lie to the police about his name and date of birth, and that he did not know why the police report contained incorrect entries. John Magoveny, the arresting officer, testified that he prepared the report, but that he did not remember the circumstances surrounding Covington's arrest. Magoveny further testified that he typically would ask an arrestee his or her name and request to see identification at the time of the arrest. He agreed, however, that scrivener's errors could happen when writing a police report. In addition to the police report, the habeas court also admitted into evidence Covington's fingerprint card that had been prepared on the date of his arrest. Magoveny testified that the card had been signed by Covington using his real name and correct date of birth.

In its memorandum of decision, the habeas court found the following: "Silverstein attempted to impeach Covington on several different grounds. At trial, Silverstein tried to impeach Covington through advancing the theory that Covington fabricated testimony in an effort to secure an early release from prison. Silverstein elicited testimony revealing that Covington had five prior [felony] convictions and faced the possibility of receiving a sentence of more than twenty years before he agreed to testify against the petitioner at the petitioner's probable cause hearing. . . . Silverstein further established that Covington had a 'do not release' status before he testified and that he was looking for 'consideration' when he came forward with the information regarding the petitioner's alleged confession. . . . Accordingly, in his closing statement, Silverstein explicitly argued that Covington had a motive for fabricating his testimony against the petitioner. Silverstein stated: 'Obviously [Covington] had a great deal to gain by testifying the way that he did.' " (Citations omitted.)

The court further found that Silverstein had called Eddie Echols[3] as a witness to contradict Covington's

testimony, and challenged Covington's testimony by questioning the likelihood of the petitioner confessing to a murder despite there being a dispute between the two men as testified to by Covington.

On the basis of these findings, the court determined that "even if it was clear from the evidence available to Silverstein that Covington had misrepresented his identifying information to the police, Covington's credibility and motive had already been extensively called into question. The petitioner has failed to demonstrate how exposing Covington's alleged misrepresentations to the police during his arrest in particular would have led to a more favorable result for the petitioner." The court then denied the petition, finding that the petitioner had failed to establish prejudice as to his claim of ineffective assistance of counsel. On March 21, 2013, the court granted the petitioner's petition for certification to appeal. This appeal followed.

We begin by setting forth the relevant legal standard. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *McClean* v. *Commissioner of Correction*, 103 Conn. App. 254, 262, 930 A.2d 693 (2007), cert. denied, 285 Conn. 913, 943 A.2d 473 (2008).

"As enunciated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] . . . [a] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A court can find against a petitioner, with respect to a claim of ineffective assistance of counsel, on either the performance prong or the prejudice prong, whichever is easier." (Citation omitted; internal quotation marks omitted.) *Ham* v. *Commissioner of Correction*, 301 Conn. 697, 703–704, 23 A.3d 682 (2011).

Having carefully reviewed the evidence presented at the habeas trial, we agree with the court that the petitioner failed to establish a reasonable probability that had Silverstein cross-examined Covington with regard to his alleged misrepresentation to the police, the outcome of the criminal trial would have been different.

Silverstein did not cross-examine Covington on the alleged false information contained in the June 9, 1993 police report, but it is hard to imagine how Covington's credibility would have been further discredited had Silverstein done so.[4] We agree with the habeas court that during the criminal trial Silverstein "extensively called into question" Covington's credibility and motive by pointing out Covington's criminal history, the implausibility of the petitioner's confession to Covington, and the reward that he received as a result of his testimony.[5] Thus, as correctly determined by the habeas court, the petitioner failed to establish prejudice. Accordingly, the habeas court properly denied the petition for a writ of habeas corpus.

The judgment is affirmed.

[1] The petitioner's name was spelled as "Darryl McIntyre" in his direct appeal. See *State* v. *McIntyre*, 242 Conn. 318, 699 A.2d 911 (1997).

[2] Before the criminal trial, Silverstein received a copy of a police report regarding Covington's arrest on an unrelated criminal charge. In the report, Covington's first name is listed as "Joseph" instead of Jeffrey; additionally, the report incorrectly lists Covington's date of birth.

[3] At the petitioner's criminal trial, Echols testified that, at the time of the alleged confession, he was present and did not hear the petitioner confess to Covington.

[4] We also note that, even if Silverstein had asked Covington about the discrepancies in the police report, pursuant to § 6-6 (b) (2) of the Connecticut Code of Evidence, he would not have been able to introduce the report if Covington denied lying to the police because "[s]pecific instances of the conduct of a witness . . . may not be proved by extrinsic evidence."

[5] During his closing argument, Silverstein pointed out to the jury that, at the time Covington purportedly heard the petitioner confess, he was being charged with the crime of sale of narcotics—a charge that was dismissed by the state once Covington testified against the petitioner.