******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.*
JEFFREY COVINGTON
(SC 20198)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

Under the statute (§ 29-35 (a)) making it a crime for any person to carry a pistol or revolver on his person outside of a dwelling house or place of business without a permit, the state must prove beyond a reasonable doubt that, inter alia, the barrel of the pistol or revolver the defendant was carrying is less than twelve inches in length.

The defendant was convicted of carrying a pistol or revolver without a permit, among other crimes, in connection with an incident in which several gunshots emanated from an automobile that was occupied by the defendant and his friend, R, who owned the vehicle. Two people suffered gunshot wounds as a result of the shooting. Following the shooting, the defendant drove the vehicle to the residence of his girlfriend's family, where the sister of the defendant's girlfriend, C, observed R remove a handgun from his waistband and hand it to the defendant. At the defendant's trial, the state did not present direct, numerical evidence of the length of the barrel of the firearm that it alleged he had used in connection with the shooting, as the firearm was never recovered by the police, and none of the state's witnesses specifically described its barrel length. The jury, however, was presented with circumstantial evidence about the firearm, which included testimony from C and from a firearms examiner, W, who testified about his examination of the two bullets retrieved from the body of one of the victims. The defendant appealed from the judgment of conviction to the Appellate Court, which rejected the defendant's claim that there was insufficient evidence that he was carrying a firearm with a barrel length of less than twelve inches. On the granting of certification, the defendant appealed to this court. *Held* that the Appellate Court correctly concluded that there was sufficient evidence to sustain the defendant's conviction under § 29-35 (a), as the state presented sufficient, circumstantial evidence to permit the jury reasonably to conclude beyond a reasonable doubt that the barrel of the firearm the defendant carried without a permit was less than twelve inches in length: C testified that, a few hours before the shooting, she observed a gun inside the glove compartment of R's vehicle, the state introduced into evidence a photograph of the interior of R's vehicle that depicted the general size of the glove compartment, and C also testified that, shortly after the shooting occurred, she saw R pull a handgun out of his waistband and hand it to the defendant, and it was not unreasonable for the jury to have concluded, on the basis of such evidence, that a firearm with a barrel of one foot or longer, plus the additional size and length of the handle, would have been too large and unwieldy to store in the glove compartment of R's vehicle and for R to transport inside his waistband; moreover, the jury's finding that the firearm the defendant was carrying had a barrel length of less than twelve inches was further supported by W's testimony that the bullets recovered from the body of one of the victims were consistent with bullets that would have been fired out of a .32 caliber "handgun or revolver," and by the trial court's instruction to the jury that the term "pistol" or "revolver" means any firearm having a barrel of less than twelve inches in length.

Argued November 14, 2019—officially released March 25, 2020*

*Procedural History*

Substitute information charging the defendant with the crimes of murder, assault in the first degree, carrying a pistol or revolver without a permit, and criminal possession of a firearm, brought to the Superior Court

in the judicial district of New Haven, geographical area number twenty-three, where the charges of murder, assault in the first degree, and carrying a pistol or revolver without a permit were tried to the jury before *Alander, J.*; verdict of guilty of carrying a pistol or revolver without a permit; thereafter, the court declared a mistrial as to the charges of murder and assault in the first degree; subsequently, the charge of criminal possession of a firearm was tried to the court, *Alander, J.*; finding of guilty; thereafter, judgment of guilty of carrying a pistol or revolver without a permit and criminal possession of a firearm, from which the defendant appealed to the Appellate Court, *Alvord, Keller* and *Bright, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Naomi T. Fetterman*, with whom was *Aaron Romano*, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Patrick Griffin*, state's attorney, and *John P. Doyle* and *Seth Garbarsky*, senior assistant state's attorneys, for the appellee (state).

*Opinion*

MULLINS, J. In this certified appeal, the defendant, Jeffrey Covington, claims that the Appellate Court improperly affirmed his conviction for carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a).[1] In particular, he argues that the state failed to present sufficient evidence that the firearm he was alleged to have been carrying had a barrel length of less than twelve inches. We disagree and, accordingly, affirm the judgment of the Appellate Court.

The Appellate Court's opinion sets forth the following relevant facts, which the jury reasonably could have found at trial. "At or about 8 p.m., on March 24, 2014, the defendant was operating an automobile that was owned by his friend, Derek Robinson. When the defendant drove Robinson's automobile away from the intersection of Whalley Avenue and Ella T. Grasso Boulevard in New Haven, Robinson was in the passenger's seat. A short time later, at approximately 8:50 p.m., Robinson's automobile was parked along Shelton Avenue in New Haven . . . . At that time, the victims, Trayvon Washington and Taijhon Washington, were walking home from a friend's house. They walked past Robinson's automobile while someone was getting into it. . . . Approximately two minutes after they had passed the automobile . . . [it] approached them at a high rate of speed. . . . Then, several gunshots emanated from the automobile. Taijhon Washington suffered fatal gunshot injuries to his chest. Trayvon Washington was shot in the head, resulting in a fractured skull. Although he survived the shooting, he endured extensive medical treatment, and a bullet from that incident remained lodged in his head at the time of trial.

"Following the shooting, the defendant drove to the residence of his girlfriend's family on Poplar Street in New Haven. He was accompanied by Robinson. The defendant's girlfriend along with some of her family members, including her sister, Dajah Crenshaw, were present at the residence. . . . When the defendant entered the residence, he was holding the keys to Robinson's automobile. Crenshaw observed Robinson remove a handgun from his waistband and hand it to the defendant. Thereafter, the defendant concealed the handgun in a dresser in his girlfriend's bedroom.

"The following day, Crenshaw overheard the defendant having a telephone conversation with Robinson's brother. During the conversation, the defendant referred to a gun, and he asked Robinson's brother if he had buried it. In the days that followed, the defendant made various statements that reflected his involvement in and responsibility for the shooting. Significantly, the defendant admitted to a longtime acquaintance, Margaret Flynn, that he happened to catch Taijhon Washington off guard and had killed him. The defendant elabo-

rated, stating that the shooting occurred while he was in Robinson's automobile but that Robinson was not involved and was unaware that the shooting was going to happen. Moreover, the defendant told Flynn that he had retaliated against Taijhon Washington because, in February [2014], relatives of Taijhon Washington assaulted him." (Footnotes omitted.) *State* v. *Covington*, 184 Conn. App. 332, 335–37, 194 A.3d 1224 (2018); see also id., 336–37 n.3 (describing consciousness of guilt evidence admitted at trial, as well as evidence that, while incarcerated pending trial, "[t]he defendant flippantly acknowledged in the presence of others that he had been the shooter").

The defendant was subsequently charged with, inter alia, carrying a pistol or revolver without a permit in violation of § 29-35 (a).[2] At the defendant's trial, the state did not present direct, numerical evidence of the length of the barrel of the firearm that it alleged he had used to commit the shooting. The firearm was never recovered by the police, and none of the state's witnesses specifically described its barrel length.

The jury was, however, presented with the following relevant circumstantial evidence about the firearm. Earl Williams, a firearms examiner, testified about his examination of the two bullets retrieved from Taijhon Washington's body. He testified that both bullets were ".32 caliber class bullets" and, although mangled, exhibited discernable "rifling" impressions. Williams explained that rifling impressions are created by firearms that are manufactured with grooves along the inside of the barrel to make the bullets rotate when fired. Williams testified that rifling impressions are typical of "all rifled firearms" and that "handguns, such as pistols and revolvers" leave rifling impressions. Williams explained that shotguns, by contrast, "are a smooth bore" and do not have rifling. Williams further testified that the bullets found in Taijhon Washington's body were "consistent with bullets that would be fired out of a .32 caliber handgun or revolver."[3]

The state also called Crenshaw as a witness. Crenshaw testified that, while riding in Robinson's vehicle a few hours before the shooting occurred, she saw "a gun" inside the glove compartment. Although Crenshaw did not testify about the size of the glove compartment, the state submitted into evidence a photograph of the interior of Robinson's vehicle, which depicted the glove compartment open.

Crenshaw further testified that, when the defendant and Robinson arrived at her residence shortly after the shooting occurred, she saw Robinson carrying "a handgun." Specifically, Crenshaw testified that she saw Robinson "pull [the] gun out of his waistband" and hand it to the defendant, who then hid it inside of a dresser drawer. Crenshaw also testified that she had not seen that firearm before, and that she could not describe

what it looked like.

The jury found the defendant guilty of carrying a pistol or revolver without a permit in violation of § 29-35 (a). The trial court imposed a sentence on this conviction of five years incarceration, execution suspended after three years, followed by three years of probation.[4] *State* v. *Covington*, supra, 184 Conn. App. 334 n.1.

The defendant appealed from this conviction to the Appellate Court, claiming that there was insufficient evidence that he carried a firearm with a barrel length of less than twelve inches.[5] Id., 341. In rejecting this claim, the Appellate Court concluded, first, that there was sufficient evidence from which the jury could have inferred that the defendant, rather than Robinson, was the shooter and, therefore, that he had carried a firearm of some type at the time and place of the shooting. Id., 343–44.

Second, the Appellate Court determined that there was sufficient evidence to permit the jury to conclude beyond a reasonable doubt that the barrel length of the firearm was less than twelve inches. Id., 350. The Appellate Court relied on Williams' testimony that the rifling impressions on the bullets recovered from Taijhon Washington's body were "consistent" with having been fired from a "handgun or revolver," as well as Crenshaw's testimony that, shortly after the shooting occurred, she saw Robinson remove "a handgun" from his "waistband" and hand it to the defendant. (Internal quotation marks omitted.) Id., 345–46. The Appellate Court reasoned that the use of the terms "revolver" and "handgun" by these witnesses permitted the jury to infer that the length of the barrel of the firearm used in the shooting was less than twelve inches. Id., 347–49. The Appellate Court further reasoned that Crenshaw's testimony that Robinson removed the handgun from his "waistband" permitted the jury to conclude "that the barrel of the gun must [have been] less than twelve inches in length." Id., 349.

On appeal to this court,[6] the defendant claims that the Appellate Court incorrectly concluded that there was sufficient evidence that the firearm had a barrel length of less than twelve inches.[7] We disagree.

We begin with the general principles governing our review. "The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We also note that the jury must find every element

proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . .

"Additionally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Taupier*, 330 Conn. 149, 186–87, 193 A.3d 1 (2018), cert. denied,     U.S.     , 139 S. Ct. 1188, 203 L. Ed. 2d 202 (2019).

Section 29-35 (a) makes it a crime for any person to "carry any *pistol or revolver* upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same . . . ." (Emphasis added.) "The term 'pistol' and the term 'revolver', as used in sections 29-28 to 29-38, inclusive, mean any firearm having a barrel less than twelve inches in length." General Statutes § 29-27. The barrel length of the firearm is an essential element of the offense that must be proven beyond a reasonable doubt. See, e.g., *State* v. *McIntyre*, 242 Conn. 318, 334, 699 A.2d 911 (1997); *State* v. *Fleming*, 111 Conn. App. 337, 346–47, 958 A.2d 1271 (2008), cert. denied, 290 Conn. 903, 962 A.2d 794 (2009).

As with any element of a criminal offense, however, the state may prove the length of the barrel with circumstantial evidence. See *State* v. *Williams*, 231 Conn. 235, 251–52, 645 A.2d 999 (1994), overruled in part on other grounds by *State* v. *Murray*, 254 Conn. 472, 487, 757 A.2d 578 (2000). This court has explained that direct, numerical evidence is not required to prove barrel length. Id., 252. In the absence of direct, numerical evidence of barrel length, this element may be satisfied by evidence that is sufficiently indicative of the size of the firearm so as to permit the jury to *reasonably and logically* infer beyond a reasonable doubt that its barrel is less than twelve inches in length. Id.

In *Williams*, as in the present case, the state neither introduced the firearm into evidence nor presented any direct evidence of the size of its barrel. See id. The state

instead relied solely on testimony from witnesses that the defendant "pulled a small handgun" out of the pocket of his "waist length jacket." (Internal quotation marks omitted.) Id. On the basis of this testimony, this court held that there was sufficient evidence of barrel length. See id. This court explained that "the jury could have reasonably inferred that the handgun that the defendant pulled from the pocket of a small sized outer garment that he wore was less than twelve inches long" and that "it is extremely unlikely that anyone would describe as 'small' a handgun that had a barrel of one foot or longer." Id.

Other appellate decisions similarly have upheld convictions under § 29-35 (a) where there was evidence that the firearm could be concealed in a small space or held with only one hand. See, e.g., *State* v. *Fleming*, supra, 111 Conn. App. 348–39 (there was sufficient evidence of barrel length where witnesses testified that defendant pulled firearm from jacket pocket and held it with one hand rather than both hands, and trial witness made gesture with hands at trial that presumably indicated size of gun); *State* v. *Williams*, 48 Conn. App. 361, 372, 709 A.2d 43 ("[i]f the length of the gun barrel were longer than twelve inches, the jury could infer that the defendant might not be able to hold the weapon with only one hand"), cert. denied, 245 Conn. 907, 718 A.2d 16 (1998); *State* v. *Gonzalez*, 25 Conn. App. 433, 444, 596 A.2d 443 (1991) (there was sufficient evidence of barrel length where witness testified that defendant pulled pistol out of back pocket and that pistol was "covered" by defendant's hand), aff'd, 222 Conn. 718, 609 A.2d 1003 (1992); cf. *State* v. *Gray-Brown*, 188 Conn. App. 446, 467 n.7, 204 A.3d 1161 (there was insufficient evidence of barrel length where "there was no [evidence] that [the firearm] could be held in one hand or concealed in a small space"), cert. denied, 331 Conn. 922, 205 A.3d 568 (2019).

In the present case, Crenshaw testified that, a few hours before the shooting, she was inside Robinson's vehicle and observed "a gun" inside the glove compartment. Although the state adduced no evidence of the specific dimensions of the glove compartment, the state did introduce into evidence photographs of the vehicle itself—showing that it was a standard sized sedan—as well as a photograph of the interior of the vehicle, which depicted the general size of the glove compartment. Crenshaw further testified that, when Robinson and the defendant arrived at her residence shortly after the shooting occurred, she saw Robinson pull "a handgun" "out of his waistband" and hand it to the defendant. The jury reasonably could have inferred from this evidence that the firearm Crenshaw saw on these occasions was the firearm used in the shooting and that, after the shooting, Robinson held it in his waistband until he and the defendant reached Crenshaw's residence for the purpose of concealing it from plain view.[8]

This evidence about the place and the manner in which the firearm was stored and carried is sufficiently indicative of its size to permit the jury reasonably to conclude beyond a reasonable doubt that its barrel was less than twelve inches in length. Indeed, the jury could have viewed the photograph of the interior of Robinson's vehicle and, using its common sense and experience, reasonably concluded that the glove compartment was a confined space that could have accommodated only a smaller sized, i.e., a shorter barreled, firearm. The waistband of a pair of pants also imposes obvious spatial constraints that we presume the jury was aware of as a matter of common sense and experience. "Jurors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand . . . ." (Internal quotation marks omitted.) *State* v. *Padua*, 273 Conn. 138, 157, 869 A.2d 192 (2005). It was not unreasonable for the jury to have concluded that a firearm with a barrel of one foot or longer—plus the additional size and length of the handle—would have been too large and unwieldy to store in the glove compartment shown in the photograph and for Robinson to transport inside his waistband. The cumulative force of this evidence establishes that the firearm was smaller in size and, thus, did not have a barrel length of or exceeding twelve inches.

The fact that it is "theoretically possible" for certain long barreled firearms to have been arranged to fit in these small spaces does not compel a different result. "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [jury's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Taupier*, supra, 330 Conn. 187. It certainly would have been preferable for the state to, for example, have asked Crenshaw to compare the length of the barrel of the handgun to a twelve inch ruler; see *State* v. *Williams*, supra, 231 Conn. 252; or to provide some other, more definitive description of its size. Nevertheless, we simply cannot say that no rational fact finder could have concluded beyond a reasonable doubt that a handgun that could fit in Robinson's waistband and the glove compartment of his vehicle, a Hyundai Sonata, had a barrel length of less than twelve inches.

Moreover, Williams testified that the bullets recovered from Taijhon Washington's body were "consistent" with the bullets that would be fired out of a .32 caliber "handgun *or revolver*." (Emphasis added.) Section 29-27 defines the term "revolver" as "any firearm having a barrel less than twelve inches in length." Indeed, the court instructed the jury in relevant part: "The term 'pistol' or 'revolver' means any firearm having a barrel

of less than twelve inches in length. The phrase 'carried a pistol or revolver upon his person' is to be understood in accordance with its ordinary meaning in our language." Given the court's guidance on the meaning of the term "revolver," the jury could have relied on Williams' testimony as some evidence that the firearm was less than twelve inches in length. Although, on cross-examination, Williams testified that he could not say to any degree of certainty what gun the bullets came from, that testimony is not necessarily inconsistent with his previous testimony that the bullets found in Taijhon Washington's body were "consistent with bullets that would be fired out of a .32 caliber handgun or revolver." Accordingly, we conclude that Williams' testimony further supports the jury's finding that the weapon the defendant was carrying had a barrel length of less than twelve inches.

In arguing that the evidence was insufficient, the defendant relies principally on *State* v. *Perry*, 48 Conn. App. 193, 709 A.2d 564, cert. denied, 244 Conn. 931, 711 A.2d 729 (1998). *Perry*, however, is inapposite. In that case, the sole evidence that the barrel length was less than twelve inches came from a witness who testified that the defendant "pulled the gun out of his jacket or coat." (Internal quotation marks omitted.) Id., 197–98. The Appellate Court concluded that this evidence was insufficient, observing that "some measure of descriptive evidence from which the jury may properly infer the barrel length is necessary in order for the state to satisfy its burden of proof." Id., 198.

Unlike *Perry*, the jury in the present case was provided with sufficient evidence from which it could infer barrel length. The jury was able to assess the size of the glove compartment from the photograph, and there was evidence that the firearm was being carried in a particular area of Robinson's clothing that the jury, applying its common sense and experience, could have inferred was highly unlikely to have accommodated a firearm with a barrel of one foot or longer. This is distinguishable from the vague, and relatively innocuous, testimony at issue in *Perry*.[9]

In sum, viewing the evidence in the light most favorable to sustaining the conviction, as we must, we conclude that the state presented sufficient, circumstantial evidence to permit the jury reasonably to conclude beyond a reasonable doubt that the gun had a barrel of less than twelve inches in length. Accordingly, the Appellate Court correctly determined that there was sufficient evidence to sustain the defendant's conviction under § 29-35 (a).

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

* March 25, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Although § 29-35 (a) was the subject of a technical amendment in 2016;

see Public Acts 2016, No. 16-193, § 9; that amendment has no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] The defendant also was charged with murder in violation of General Statutes § 53a-54a (a), assault in the first degree with a firearm in violation of General Statutes § 53a-59 (a) (5), and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). *State* v. *Covington*, supra, 184 Conn. App. 334 and n.1; see footnote 4 of this opinion.

[3] We acknowledge that, on cross-examination, Williams admitted that the bullets were too damaged for him to determine whether they had been fired from a revolver rather than a semiautomatic weapon. Defense counsel then asked Williams: "[B]ased on your examination, you cannot say to any degree of certainty what gun [the bullets] came from, correct?" Williams responded: "That is correct."

[4] The defendant also was convicted, following a trial to the court, of criminal possession of a firearm and sentenced to ten years incarceration, execution suspended after seven years, followed by three years of probation, to be served consecutively with the sentence imposed on the conviction for carrying a pistol or revolver without a permit. *State* v. *Covington*, supra, 184 Conn. App. 334 n.1. The trial court also required the defendant to register as a deadly weapon offender for a period of five years. Id. The jury was unable to reach a unanimous verdict with respect to the charges of murder and assault in the first degree with a firearm, and the trial court declared a mistrial on those charges. Id. The defendant subsequently was acquitted of these charges following a retrial.

[5] The defendant also claimed that his conviction for criminal possession of a firearm had to be vacated and that he was entitled to a new sentencing hearing. *State* v. *Covington*, supra, 184 Conn. App. 335; see footnote 4 of this opinion. The Appellate Court rejected those claims. *State* v. *Covington*, supra, 350–55. The Appellate Court's resolution of those claims is not at issue in this appeal.

[6] We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the state presented sufficient evidence upon which the jury could find the defendant guilty of carrying a pistol [or revolver] without a permit, in violation of . . . § 29-35?" *State* v. *Covington*, 330 Conn. 933, 195 A.3d 383 (2018).

[7] The defendant does not challenge the sufficiency of the evidence with respect to any of the other elements of his conviction under § 29-35 (a). Accordingly, we limit our inquiry to the question of whether there was sufficient evidence of barrel length.

[8] We disagree with the defendant's claim that the jury could not reasonably have inferred that the firearm Crenshaw saw Robinson pull from his waistband was the same one she saw earlier that day inside the glove compartment. Although Crenshaw testified that she had never seen the firearm Robinson pulled from his waistband before, the jury was not required to credit this portion of her testimony. "It is without question that the jury is the ultimate arbiter of fact and credibility. . . . As such, it may believe or disbelieve all or any portion of the testimony offered. . . . In the course of [our] analysis [of the sufficiency of the evidence], we assume that the jury credited the evidence favorable to the state and discredited the evidence favorable to the defendant." (Citations omitted.) *State* v. *Hart*, 221 Conn. 595, 604–605, 605 A.2d 1366 (1992).

We therefore presume that the jury credited the pieces of Crenshaw's testimony that support its finding that the barrel of the gun was less than twelve inches in length. Further, although "the jury may not infer the opposite of a witness' testimony solely from its disbelief of that testimony"; id., 605; Crenshaw's testimony that she saw the firearm inside of Robinson's vehicle—the vehicle implicated in the shooting—mere hours before the shooting occurred and then saw him remove a gun from his waistband just after the shooting occurred provided sufficient *affirmative* evidence to permit the jury to draw a reasonable inference that the firearms she saw on these two occasions were one and the same.

[9] The defendant's reliance on *State* v. *Gray-Brown*, supra, 188 Conn. App. 446, also is misplaced. In that case, the Appellate Court concluded that there was insufficient, circumstantial evidence of barrel length because, unlike certain prior decisions upholding convictions under § 29-35 (a), "there was no eyewitness who observed the firearm used by the defendant and [who] stated that it could be held in one hand or concealed in a small space." Id., 467 n.7. As we have explained, there was evidence in the present case that the firearm could be and was concealed or stored in small spaces.