******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* LIVORIO SANCHEZ
(AC 39193)

STATE OF CONNECTICUT *v.*
MICHAEL A. FERNANDES
(AC 39194)

STATE OF CONNECTICUT *v.*
FRANCISCO RODRIGUEZ
(AC 39196)

STATE OF CONNECTICUT *v.* FRANK SLAUGHTER
(AC 39198)

STATE OF CONNECTICUT *v.* MICHAEL
ANTHONY THIGPEN
(AC 39199)

Keller, Bright and Bishop, Js.

*Syllabus*

The defendants, who previously had been convicted under informations in five separate cases of various crimes, including sale of narcotics by a person who is not drug-dependent and possession of narcotics with intent to sell by a person who is not drug-dependent in violation of statute ([Rev. to 2013] § 21a-278 [b]), appealed to this court from the judgments of the trial court dismissing their motions to correct an illegal sentence for lack of subject matter jurisdiction. The defendants claimed that because their lack of drug dependency was a fact that would result in a mandatory minimum sentence that would expose each defendant to a higher maximum sentence, their sentences were illegal because the lack of drug dependency was an element that the state was required to plead and prove beyond a reasonable doubt, which it failed to do. In making that argument, the defendants relied on *Apprendi* v. *New Jersey* (530 U.S. 466), which requires the state to charge and to prove to the fact finder beyond a reasonable doubt any factor, other than a prior conviction, that increases the maximum penalty for a crime, and *Alleyne* v. *United States* (570 U.S. 99), which extended the protections of *Apprendi* to mandatory minimum sentences. During the pendency of these appeals, our Supreme Court decided *State* v. *Evans* (329 Conn. 770), the factual and procedural history of which closely mirrored that underlying the present cases, and in which the court held that drug dependency is an affirmative defense that must be proven by the defendant, rather than an element that must be proven by the state, and, thus, that the sentencing of a defendant under § 21a-278 (b) without a finding or admission that the defendant is not drug-dependent does not implicate *Alleyne*, which concerned the facts that must be proven by the state in order to trigger the mandatory minimum sentence for a crime. Following the release of *Evans*, the parties submitted supplemental briefs regarding its impact on their appeals. *Held* that *Evans* controlled the disposition of the defendants' appeals and, in light of that decision, the defendants' motions to correct no longer presented colorable claims of an illegal sentence: although it was improper for the trial court to have dismissed the defendants' motions to correct an illegal sentence for lack of subject matter jurisdiction because, at the time the trial court adjudicated the motions to correct before *Evans* was decided, they presented colorable claims of an illegal sentence, in light of *Evans*, it was clear that the defendants' claims of an illegal sentence would now fail on the merits, as our Supreme Court has now squarely rejected claims identical to those made by the defendants in the present cases, and, therefore, they no longer presented colorable issues; accordingly, in light of *Evans*, a trial court now faced with similar claims as the ones raised by the defendants in the present cases would not have subject matter jurisdiction to decide them, and, therefore, the judgements dismissing the

motions to correct were affirmed.

Argued January 29—officially released June 11, 2019

*Procedural History*

Information, in the first case, charging the defendant with the crime of sale of narcotics by a person who is not drug-dependent, and information, in the second case, charging the defendant with the crimes of possession of narcotics with intent to sell by a person who is not drug-dependent and interfering with a police officer, and information, in the third case, charging the defendant with the crimes of possession of narcotics with the intent to sell by a person who is not drug-dependent, possession of narcotics with the intent to sell within 1500 feet of a school, carrying a pistol without a permit, and criminal possession of a firearm by a felon, and information, in the fourth case, charging the defendant with the crimes of sale of narcotics by a person who is not drug-dependent and possession of narcotics with the intent to sell by a person who is not drug-dependent, and information, in the fifth case, charging the defendant with the crimes of sale of narcotics by a person who is not drug-dependent and possession of narcotics, brought to the Superior Court in the judicial district of Fairfield, where the defendants in the first, second and fourth cases were presented to the court, *Arnold, J.*, on pleas of guilty, and the defendants in the third and fifth cases were presented to the court, *Iannotti, J.*, on pleas of guilty; judgments of guilty; thereafter, the court, *E. Richards, J.*, dismissed the defendants' motions to correct illegal sentences, and the defendants filed separate appeals to this court. *Affirmed.*

*Daniel M. Erwin*, assigned counsel, with whom were *Temmy Ann Miller*, assigned counsel, and, on the briefs, *Nicholas Marolda*, assigned counsel, for the appellants (defendants).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the briefs, were *John C. Smriga*, state's attorney, *Marc R. Durso*, senior assistant state's attorney, *Nicholas J. Bove, Jr.*, senior assistant state's attorney, *Michael A. DeJoseph, Jr.*, senior assistant state's attorney, *Richard Palombo, Jr.*, former senior assistant state's attorney, and *Yamini Menon*, former special deputy assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. These appeals all stem from the same legal root with factual differences not pertinent to the common legal issues they present. In each case, the defendant was convicted, following a plea of guilty, of, inter alia, sale of narcotics and/or possession of narcotics with the intent to sell by a person who is not drug-dependent, in violation of General Statutes (Rev. to 2013) § 21a-278 (b),[1] and was sentenced to a term of incarceration that included the statutorily mandated minimum sentence of five years. In each instance, the court made no finding, nor did the defendant admit, that he was not drug-dependent. Each defendant subsequently filed a motion to correct an illegal sentence, alleging, in essence, that his sentence was illegal because, under *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), and *Alleyne* v. *United States*, 570 U.S. 99, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013), the state was required to plead and prove his lack of drug dependency beyond a reasonable doubt given that it is a fact that would result in a mandatory minimum sentence that would expose the defendant to a higher maximum sentence. The trial court dismissed each motion for lack of subject matter jurisdiction, and the defendants appealed to this court. We conclude that, in light of our Supreme Court's recent decision in *State* v. *Evans*, 329 Conn. 770, 189 A.3d 1184 (2018), cert. denied,      U.S.     , 139 S. Ct. 1304,      L. Ed. 2d      (2019), the defendants' motions to correct no longer present colorable claims of an illegal sentence, and, accordingly, we affirm the trial court's dismissals of their motions.

The records in these appeals reveal the following undisputed facts and procedural history. On March 12, 2013, the defendant Livorio Sanchez was convicted, following a plea of guilty, of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b). During the plea canvass, the prosecutor recited the facts underlying the alleged sale of heroin by Sanchez, but he made no representation as to whether Sanchez was drug-dependent. Similarly, during the questioning of Sanchez by the court, *Arnold*, *J.*, there was no discussion of drug dependency. Sanchez was subsequently sentenced on May 15, 2013, in accordance with an agreed upon disposition, to a term of incarceration of twelve years, execution suspended after eight years, followed by three years of probation. As a condition of his probation, the court ordered that he undergo "substance abuse evaluation and treatment including random urinalysis . . . ." During the sentencing hearing, however, there was no discussion by the court, counsel, or Sanchez of the issue of drug dependency, nor did the court make explicit that the defendant's period of incarceration included a mandatory minimum period of five years pursuant to § 21a-278 (b).

On April 12, 2012, the defendant Michael A. Fernandes was convicted, following a plea of guilty, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b).[2] During a colloquy with defense counsel prior to canvassing Fernandes, the court, *Arnold, J.*, noted, and defense counsel agreed, that the narcotics charge included a mandatory minimum sentence of five years of incarceration. During the canvass itself, although the court asked Fernandes if his counsel had advised him of the elements of the charge to which he was pleading guilty and the mandatory minimum penalties that he could receive, there was no mention by the court or counsel of drug dependency. Having waived the requirement of a presentence investigation report, Fernandes was immediately sentenced, pursuant to an agreed upon disposition, to a term of incarceration of ten years, execution suspended after five years, followed by a period of three years of probation. In reciting Fernandes' sentence, the court stated that the five year period of incarceration was the mandatory minimum sentence required by the statute.

On February 27, 2012, the defendant Francisco Rodriguez was convicted, following a plea of guilty, of possession of narcotics with the intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b).[3] In response to a question from the court, *Iannotti, J.*, at the outset of its canvass, Rodriguez confirmed that his counsel had explained the maximum and mandatory minimum sentences to which his plea could expose him. Rodriguez also acknowledged during the canvass that by pleading guilty, he was giving up a number of enumerated rights, including the right to present defenses on his behalf at trial. Throughout the proceeding, there was no mention by the court, counsel, or Rodriguez of the issue of drug dependency. Having waived the requirement of a presentence investigation report, Rodriguez was immediately sentenced, pursuant to an agreed upon disposition, to a total effective term of incarceration of ten years, five of which reflected the mandatory minimum sentence under § 21a-278 (b).

On September 9, 2013, the defendant Frank Slaughter was convicted, following a plea of guilty, of one count of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b) and two counts of possession of narcotics with the intent to sell by a person who is not drug-dependent also in violation of § 21a-278 (b). As part of a plea agreement, the other charges then pending against Slaughter were nolled by the state. At the beginning of the canvass, the state informed the court, *Arnold, J.*, that all three counts required a mandatory minimum sentence of five years, and, in response to questioning from the court, Slaughter initially stated that he was unaware that the agreed disposition included a mandatory minimum period of

incarceration of five years. After a brief colloquy, however, Slaughter stated to the court that he understood that the sentence to be imposed would carry a minimum term of five years of incarceration.

The record further reflects that before the court sentenced Slaughter, but after the court had stated the sentences to be imposed, Slaughter interjected as follows: "[A]s long as I've been coming in and out of the courthouse, I've been drug-dependent. I been drug-dependent. Now that I'm being charged with a drug-dependent case, how is that . . . ." At this juncture, the court pointed out to Slaughter the number of charges initially confronting him and the fact that, if he was convicted after trial, he could face "close to eighty years' worth of exposure." The court continued to inform Slaughter that it would accept his guilty pleas only if they were made voluntarily, and it offered him the opportunity either to withdraw his pleas or to proceed with the sentencing. Slaughter responded, "[p]roceed." After confirming Slaughter's response, the court found that his guilty pleas were knowingly and voluntarily made and found him guilty as to all three counts. Because Slaughter waived the requirement of a presentence investigation report, the court proceeded immediately to sentence him, pursuant to an agreed upon disposition, to twelve years of incarceration for each count, execution suspended after seven years, five of which were mandatory, followed by a five year period of probation. As a condition of his probation, the court ordered that Slaughter undergo "substance abuse evaluation and treatment as deemed appropriate by the Department of Adult Probation." Other than Slaughter's statement that he was drug-dependent, there was no discussion by the court or counsel regarding the relationship between drug dependency and the criminal charges to which Slaughter pleaded guilty. Notably, when Slaughter raised the issue of his drug dependency, there was no discussion by the court or counsel as to whether such a claim could be a defense to any of the charges.

On July 26, 2011, the defendant Michael Anthony Thigpen was convicted, following a plea of guilty, of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b).[4] During the canvass, Thigpen confirmed with the court, *Iannotti, J.*, that his counsel had discussed with him the elements of the offenses to which he was pleading guilty, as well as the maximum and mandatory minimum sentences to which his guilty pleas would expose him. Thigpen also acknowledged that he was giving up his right to present defenses by pleading guilty. There was no discussion by the court, counsel, or Thigpen of the issue of drug dependency. On September 22, 2011, pursuant to an agreed upon disposition, Thigpen was sentenced to a term of incarceration of fifteen years, execution suspended after eight years, five of which were mandatory,

to be followed by three years of probation. As conditions of his probation, the court ordered him to undergo substance abuse evaluation and treatment, as deemed necessary, and to attend "ten weekly [Narcotics Anonymous] meetings." When asked if he wanted to speak prior to being sentenced, Thigpen indicated to the court that he had a heart condition for which he required medication and treatment. At no time during this hearing was the issue of drug dependency raised or discussed by the court, counsel, or Thigpen.[5]

On August 22, 2014, the defendants filed the operative, amended motions to correct their allegedly illegal sentences pursuant to Practice Book § 43-22;[6] although each was filed separately, the motions were identical in substance. The defendants claimed, inter alia, that their sentences were illegal because, under *Apprendi* v. *New Jersey*, supra, 530 U.S. 466, and *Alleyne* v. *United States*, supra, 570 U.S. 99, the sentences "exceed[ed] the relevant statutory maximum limits" and "the fact triggering the mandatory minimum sentence was not found by a proper fact finder or admitted by the defendant . . . ."[7] The state opposed the defendants' motions to correct, arguing, inter alia, that the court lacked subject matter jurisdiction because the motions attacked the validity of the defendants' guilty pleas rather than the sentences imposed.

The court, *E. Richards, J.*, heard the motions together in one proceeding on January 29, 2015.[8] On May 6, 2015, the court issued a memorandum of decision dismissing the motions to correct. Following its comprehensive review of the factual record and the relevant federal and Connecticut appellate decisional law, the court concluded that the defendants were, in essence, attacking their convictions and not their sentences and, for that reason, the court dismissed their motions for lack of subject matter jurisdiction. The defendants appealed to this court, arguing that the trial court misconstrued their motions to correct and that, properly construed, they alleged cognizable claims of an illegal sentence under *Apprendi* and *Alleyne*.[9]

On April 13, 2017, after the defendants had briefed their claims but before oral argument was scheduled, this court issued orders staying each appeal pending our Supreme Court's decisions in *State* v. *Evans*, supra, 329 Conn. 770, and *State* v. *Allan*, 329 Conn. 815, 190 A.3d 874 (2018), cert. denied,      U.S.    , 139 S. Ct. 1233, 203 L. Ed. 2d 247 (2019), the factual and procedural history of which closely mirror that underlying the present cases. Following the release of those decisions, the parties submitted supplemental briefs regarding the impact of the decisions on the present cases.[10] Because *Evans* controls our disposition of the defendants' appeals, we begin with a discussion of that decision.[11]

The defendant in *Evans* was convicted, following a

plea of guilty, of sale of narcotics by a person who is not drug-dependent in violation of § 21a-278 (b). *State* v. *Evans*, supra, 329 Conn. 774. The issue of drug dependency was not discussed by the court, counsel, or the defendant during the plea hearing. Id. After being sentenced to five years of imprisonment with five years of special parole, the defendant filed a motion to correct an illegal sentence. Id., 775. Just as in the present cases, the defendant in *Evans* claimed in his motion to correct that his sentence was illegal because, inter alia, under *Alleyne* and *Apprendi*, the sentence "exceed[ed] the relevant statutory limits" and "the fact triggering the mandatory minimum [sentence] was not found by a proper [fact finder] or admitted by the defendant . . . ." (Internal quotation marks omitted.) Id.

The trial court in *Evans* denied the defendant's motion to correct on the merits. Id., 776. The trial court began by "observing that, in *State* v. *Ray*, [290 Conn. 602, 623–26, 966 A.2d 148 (2009)], [our Supreme Court] had concluded that *Apprendi*, which requires that the state charge, and prove to the fact finder beyond a reasonable doubt, any factor, other than a prior conviction, that increases the maximum penalty for a crime; see *Apprendi* v. *New Jersey*, supra, 474–97; did not apply to proof of drug dependency under § 21a-278 (b) because such proof constitutes an affirmative defense under that statute. The trial court then rejected the defendant's argument that *Ray* is no longer good law under *Alleyne*, which extended the rule set forth in *Apprendi* to facts that increase a statutory minimum sentence. See *Alleyne* v. *United States*, supra, [570 U.S.] 103. After rejecting the defendant's other challenges to his sentence, the trial court rendered judgment denying the motion to correct an illegal sentence." (Footnotes omitted.) *State* v. *Evans*, supra, 329 Conn. 775–76.

On appeal to our Supreme Court,[12] the defendant claimed, inter alia, that the court should overrule its interpretation of § 21a-278 (b) in *Ray* because the United States Supreme Court's subsequent decision in *Alleyne* v. *United States*, supra, 570 U.S. 99, requires the state to plead and prove beyond a reasonable doubt those facts, such as lack of drug dependency under § 21a-278 (b), that trigger mandatory minimum sentences. *State* v. *Evans*, supra, 329 Conn. 791. The state disagreed with the merits of the defendant's claims and further contended that the trial court should have dismissed the defendant's motion to correct for lack of subject matter jurisdiction. Id., 776.

The court first addressed the state's challenge to the trial court's subject matter jurisdiction. The state argued, inter alia, that the defendant's motion to correct did not challenge the sentencing phase of the proceeding but, rather, the underlying conviction. Id., 778; see also *State* v. *Lawrence*, 281 Conn. 147, 158, 913 A.2d 428 (2007) ("[A] challenge to the legality of a sentence

focuses not on what transpired during the trial or on the underlying conviction. In order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, *the sentencing proceeding, and not the trial leading to the conviction, must be the subject of the attack*." [Emphasis added.]). The court disagreed. It began by noting that "[t]he state's jurisdictional challenge require[d] [it] to consider whether the defendant ha[d] raised a colorable claim within the scope of Practice Book § 43-22 that would, if the merits of the claim were reached and decided in the defendant's favor, require correction of a sentence. . . . A colorable claim is one that is superficially well founded but that may ultimately be deemed invalid. . . . [This] jurisdictional inquiry is guided by the plausibility that the defendant's claim is a challenge to his sentence, rather than its ultimate legal correctness." (Citations omitted; internal quotation marks omitted.) *State* v. *Evans*, supra, 783–84.

Turning to the defendant's claims, the court in *Evans* noted that he was not asking it "to disturb his conviction under § 21a-278 (b), or otherwise claim[ing] that he was convicted under the wrong statute. Instead, the defendant [was seeking] resentencing, claiming that § 21a-278 (b) merely enhances the penalty available under [General Statutes (Rev. to 2013)] § 21a-277 (a)[13] when those statutes are read with the judicial gloss rendered necessary by the United States Supreme Court's decisions in *Alleyne* v. *United States*, supra, 570 U.S. 99, and *Apprendi* v. *New Jersey*, supra, 530 U.S. 466." (Footnote added.) Id., 785. "Given the otherwise identical statutory language of §§ 21a-277 (a) and 21a-278 (b), and the lack of any case law from [our Supreme Court] squarely rejecting the defendant's proffered interpretation of § 21a-278 (b) as merely providing a penalty enhancement in view of the [United States] Supreme Court's decision in *Alleyne*, which extended the protections of *Apprendi* to mandatory minimum sentences . . . [the court] conclude[d] that the defendant's interpretation of the narcotics statutory scheme [was] sufficiently plausible to render it colorable for the purpose of jurisdiction over his motion." (Citation omitted.) Id., 786.

The court then turned to the defendant's claim that *Ray* should be overruled in light of *Alleyne*. Id., 791. The court began with a review of its decision in *Ray* interpreting § 21a-278 (b), which provides in relevant part that "[a]ny person who . . . sells . . . to another person any narcotic substance . . . and who is not, at the time of such action, a drug-dependent person, for a first offense shall be imprisoned not less than five years or more than twenty years . . . ." General Statutes (Rev. to 2013) § 21a-278 (b). "[I]n *Ray*, [the court] declined the defendant's invitation to follow the analysis of Justice Berdon's dissent in [*State* v. *Hart*, 221 Conn. 595, 615–22, 605 A.2d 1366 (1992) (*Berdon, J.*

dissenting)], which interpreted § 21a-278 (b) to be effectively . . . an aggravated form of § 21a-277 and concluded that, therefore, the 'not . . . a drug-dependent person' language in § 21a-278 (b) constitutes an aggravating factor that must be treated as an element and must be proven by the state." (Footnote omitted; internal quotation marks omitted.) *State* v. *Evans*, supra, 329 Conn. 794–95. "Applying the principles of [United States Supreme Court case law leading to *Apprendi*, including *Patterson* v. *New York*, 432 U.S. 197, 210, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977), the court in *Ray* further concluded] that placing the burden on the defendant to prove by a preponderance of the evidence a fact—drug dependency—that affects the severity of his punishment under § 21a-278 (b) is not unconstitutional." (Internal quotation marks omitted.) *State* v. *Evans*, supra, 797.

With this review of *Ray* in mind, the court then turned to the defendant's claim that the United States Supreme Court's decision in *Alleyne* required it to overrule *Ray*. The defendant argued that "lack of drug dependency has the effect of increasing punishment 'above what is otherwise legally prescribed'; *Alleyne* v. *United States*, supra, [570 U.S.] 108; by the otherwise identical § 21a-277 (a) and, therefore, is an element of the offense to be proven by the state. Accordingly, the defendant argue[d] that the imposition of a mandatory minimum sentence was improper because the state did not prove, nor did the defendant admit, a lack of drug dependency." *State* v. *Evans*, supra, 329 Conn. 798.

After reviewing *Alleyne* and related federal precedent, the court in *Evans* held that "*State* v. *Ray*, supra, 290 Conn. 602, remains good law in the wake of *Alleyne*. Although *Alleyne* extended *Apprendi* to mandatory minimum sentences, *Alleyne* did *not* disturb those portions of *Apprendi* that reaffirmed *Patterson* v. *New York*, supra, 432 U.S. 208–10, which upheld the states' prerogative to utilize affirmative defenses to mitigate or eliminate criminal liability without running afoul of due process. Moreover, *Alleyne* did nothing to disturb long-standing Supreme Court precedent holding that whether a sentencing factor is, in essence, an element requiring the state to plead and prove it beyond a reasonable doubt, or an affirmative defense, the pleading and proof of which may be allocated to the defendant, is a matter of state law for 'authoritative' determination by state courts interpreting state statutes . . . ." (Citation omitted; emphasis in original.) *State* v. *Evans*, supra, 329 Conn. 802–803. Accordingly, after rejecting the defendant's remaining claims, the court affirmed the trial court's denial of his motion to correct an illegal sentence. Id., 815.

In sum, the court in *Evans* cemented its prior holding in *Ray* that drug dependency is an affirmative defense to § 21a-278 (b) that must be proven by the defendant,

and, thus, it held that the sentencing of a defendant under § 21a-278 (b) without a finding or admission that the defendant is not drug-dependent does not implicate *Alleyne*, which deals with facts that must be proven *by the state* in order to trigger the mandatory minimum sentence for a crime.

In the present cases, the defendants argued before the trial court that *Ray* is no longer good law in light of *Alleyne* and that not being drug-dependent therefore constitutes an element of § 21a-278 (b) that must be proven by the state. In view of *Evans*, it is clear that the defendants' claims of an illegal sentence would fail on the merits. The trial court in the present cases, however, did not dispose of the defendants' motions to correct on the merits; it dismissed them for lack of subject matter jurisdiction.

The court's jurisdictional holding in *Evans* leads us to conclude that the trial court's dismissals in the cases at hand were improper because, at the time the trial court adjudicated the defendants' motions—pre-*Evans*—they presented colorable claims of an illegal sentence. See id., 786–88. In our view, however, the defendants' claims have since lost their hue. One of the primary reasons underlying the court's conclusion in *Evans* regarding jurisdiction was the fact that there had been a "lack of any case law from [our Supreme Court] squarely rejecting the defendant's proffered interpretation of § 21a-278 (b) as merely providing a penalty enhancement in view of the [United States] Supreme Court's decision in *Alleyne* . . . ." Id., 786. Because our Supreme Court has now squarely rejected claims identical to those made by the defendants in the present cases, they no longer present colorable issues. Accordingly, although it was error, at the time, for the trial court to have dismissed the defendants' motions for lack of subject matter jurisdiction, in light of *Evans*, a trial court faced with such claims today would not have subject matter jurisdiction to decide them. We therefore affirm the trial court's dismissals, as it would serve no beneficial purpose to remand the cases with direction to dismiss the motions pursuant to *Evans*.[14]

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The defendants were convicted at different times between 2011 and 2013. During this period of time, the language of § 21a-278 remained unchanged. For the sake of convenience, all references to § 21a-278 in this opinion are to the 2013 revision of the statute.

General Statutes (Rev. to 2013) § 21a-278 (b) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any narcotic substance, hallucinogenic substance other than marijuana, amphetamine-type substance, or one kilogram or more of a cannabis-type substance, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, for a first offense shall be imprisoned not less than five years or more than twenty years; and for each subsequent offense shall be imprisoned not less than ten years or more than twenty-five years. The execution of the mandatory minimum sentence imposed by

the provisions of this subsection shall not be suspended, except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years, or (2) such person's mental capacity was significantly impaired, but not so impaired as to constitute a defense to prosecution."

[2] Fernandes also was convicted, on a plea of guilty, of interfering with a police officer in violation of General Statutes § 53a-167a.

[3] Rodriguez also was convicted, on a plea of guilty, of possession of narcotics with the intent to sell within 1500 feet of a school in violation of General Statutes (Rev. to 2011) § 21a-278a (b), carrying a pistol without a permit in violation of General Statutes § 29-35 (a), and criminal possession of a firearm by a felon in violation of General Statutes (Supp. 2012) § 53a-217. Rodriguez admitted, as well, to a violation of probation.

[4] In addition, upon his own admission, Thigpen was found to have violated his probation. He also was convicted, on a plea of guilty, of possession of narcotics in violation of General Statutes (Rev. to 2011) § 21a-279 (a).

[5] In light of the state of Connecticut's "Second Chance Society" initiatives and an attendant increased awareness of the central role drug dependency plays in criminal conduct, we believe that it would be appropriate for a trial court, while canvassing a defendant on a plea of guilty to a violation of § 21-278 (b), to ensure that the defendant understands that drug dependency is an affirmative defense to the charge and that a guilty plea constitutes a waiver of that defense, and to ensure that any such waiver is made knowingly and voluntarily. We make this suggestion in view of the fact that a guilty plea to this offense may, at least for the mandatory minimum period of incarceration, disqualify a defendant from participation in any intensive residential community based drug treatment program.

[6] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[7] In their motions to correct, the defendants also claimed that their sentences were illegal or imposed in an illegal manner because (1) the court relied on "an inaccurate understanding" of the relevant facts and legal principles, (2) the court was "unaware of the available sentencing range [due to an erroneous belief] that it was required to impose the mandatory minimum sentence," and (3) the sentences violated the rule of lenity and the requirement of article first, § 9, of the Connecticut constitution that no person shall be confined unless clearly warranted by law. In subsequently filed memoranda of law in support of the motions, the defendants additionally claimed that their sentences were illegal and imposed in an illegal manner because they violated the defendants' state and federal constitutional rights to equal protection of the laws and due process, in that there is no rational basis for punishing the same behavior with differing punishments under two separate statutes. The trial court determined that it lacked subject matter jurisdiction to decide these claims as well. The defendants do not challenge this determination on appeal, and we therefore do not address them further.

[8] In conjunction with these motions, the court also heard a similar motion to correct filed by Albert Nalewajk. Nalewajk appealed from the same memorandum of decision giving rise to the present appeals. On February 6, 2019, while Nalewajk's appeal was pending, his counsel filed a suggestion of death indicating that Nalewajk had died. Consequently, this court dismissed the appeal as moot. See *State* v. *Nalewajk*, 190 Conn. App.     ,     A.3d (2019).

[9] While these appeals were pending and before the date of oral argument, we sent a notice to counsel in each appeal informing them that, at oral argument, they should be prepared to address the following additional issues at oral argument: "Is any defendant's case moot because: (1) he has fully served the incarceration part of his sentence; or (2) he has fully served the mandatory minimum portion of his incarceration sentence?" On the basis of representations made by counsel at oral argument, we are not able to conclude that any of the appeals at hand are moot for either of the reasons set forth in our notice to counsel.

[10] On November 16, 2018, this court issued the following order in each of the appeals at hand: "It is hereby ordered that the stay of the appeal is lifted. The parties are also hereby ordered to file memoranda of no more than ten pages on or before December 17, 2018, addressing the impact of *State* v. *Evans*, [supra, 329 Conn. 770] and *State* v. *Allan*, [supra, 329 Conn. 815], on the appeal." The state and the defendants timely complied with

this order.

[11] *Allan* is the companion case to *Evans* and is factually and procedurally similar to it. See *State* v. *Allan*, supra, 329 Conn. 816, 819. We therefore do not separately discuss *Allan*.

[12] The court in *Evans* had granted the defendant's motion to transfer his appeal from the Appellate Court to our Supreme Court, pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2. *State* v. *Evans*, supra, 329 Conn. 773 n.2.

[13] For the reasons stated in footnote 1 of this opinion, we refer to the 2013 revision of § 21a-277, which provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[14] It is well accepted that "[w]hen a trial court reaches a correct outcome, but on grounds that cannot be sustained, [this court has] repeatedly upheld the court's judgment if there are other grounds to support it." (Internal quotation marks omitted.) *Lederle* v. *Spivey*, 151 Conn. App. 813, 818, 96 A.3d 1259, cert. denied, 314 Conn. 932, 102 A.3d 84 (2014).